# EXHIBIT 1

| | | |
|---|---|---|
| AOC-E-105    Sum Code: CI<br>Rev. 9-14<br><br>Commonwealth of Kentucky<br>Court of Justice    Courts.ky.gov<br><br>CR 4.02; Cr Official Form 1 | <br>**CIVIL SUMMONS** | Case #: **25-CI-002314**<br>Court:    **CIRCUIT**<br>County: **JEFFERSON Circuit** |

*Plantiff,* **NEVILLE, RILEY VS. THE SALVATION ARMY USA SOUTHERN TERRITORY**, *Defendant*

TO:  **CT CORPORATION SYSTEM**

   **306 W. MAIN ST.**

   **SUITE 512**

   **FRANKFORT, KY 40601**

Memo: Related party is THE SALVATION ARMY USA SOUTHERN TERRITORY

The Commonwealth of Kentucky to Defendant:
**THE SALVATION ARMY USA SOUTHERN TERRITORY**

   You are hereby notified that a **legal action has been filed against you** in this Court demanding relief as shown on the document delivered to you with this Summons. **Unless a written defense is made by you or by an attorney on your behalf within twenty (20) days** following the day this paper is delivered to you, judgment by default may be taken against you for the relief demanded in the attached complaint.

The name(s) and address(es) of the party or parties demanding relief against you or his/her (their) attorney(s) are shown on the document delivered to you with this Summons.

Davis L. Nicholson

Jefferson Circuit Clerk
Date: **3/26/2025**

---

### Proof of Service

This Summons was:

☐ Served by delivering a true copy and the Complaint (or other initiating document)

   To: _____

☐ Not Served because: _____

Date: _____, 20_____

Served By _____

Title _____

Summons ID: 1021266266925649@00001098505
CIRCUIT: 25-CI-002314 Certified Mail
NEVILLE, RILEY VS. THE SALVATION ARMY USA SOUTHERN TERRITORY



Page 1 of 1

eFile(

**Filed**          25-CI-002314    03/26/2025              David L. Nicholson, Jefferson Circuit Clerk

## COMMONWEALTH OF KENTUCKY
## JEFFERSON CIRCUIT COURT
## CIVIL ACTION NO _____
## DIVISION __

RILEY NEVILLE
PLAINTIFF

v.

THE SALVATION ARMY NATIONAL CORPORATION
615 SLATERS LN.
ALEXANDRIA, VA 22314

        SERVE:      The Salvation Army National Corporation
                           4701 Cox St., Suite 285
                           Glen Allen, VA 23060

and

THE SALVATION ARMY USA SOUTHERN TERRITORY
DBA THE SALVATION ARMY
1424 NORTHEAST EXPRESSWAY
ATLANTA, GA 30329

        SERVE:      CT Corporation System
                           306 W. Main St.
                           Suite 512
                           Frankfort, KY 40601

and

THE SALVATION ARMY KENTUCKY AND TENNESSEE DIVISION
DEFENDANTS

        SERVE:      The Salvation Army Kentucky and Tennessee Division
                           2110 Wickham Place
                           Louisville, Kentucky 40245

///
///
///



## COMPLAINT

Comes Plaintiff, Riley Neville (hereinafter "Riley"), for her Complaint against Defendants, The Salvation Army National Corporation (hereinafter "Defendant Salvation Army USA"), The Salvation Army USA – Southern Territory (hereinafter "Defendant Southern Territory"), and The Salvation Army Kentucky and Tennessee Division (hereinafter "Defendant K/T Division"), states as follows:

## PARTIES

1.     Plaintiff, Riley, is and was at all times relevant herein, a resident of Mt. Juliet, Tennessee.

2.     Salvation Army USA is a foreign corporation registered with the Virginia Secretary of State whose principal place of business is 615 Slaters Ln., Alexandria, VA 22314. At all times relevant herein, Defendant Salvation Army USA Commander had authority over Defendant Southern Territory to communicate and ensure compliance with directives given by The Salvation Army International.

3.     The Southern Territory is a foreign corporation registered with the Kentucky Secretary of State and whose principal place of business is 1424 Northeast Expressway, Atlanta, GA 30329. At all times relevant herein, Defendant K/T Division is under the jurisdiction and authority of Defendant Southern Territory and abides by their rules and policies.

4.     The K/T Division is an unincorporated entity with a principal place of business at 2110 Wickham Place, Louisville, Kentucky 40245. Defendant K/T Division is the local representative body of Defendant Southern Territory. The K/T

2

Case 3:25-cv-00227-RGJ    Document 1-1    Filed 04/21/25    Page 5 of 65 PageID #: 13

Filed            25-CI-002314    03/26/2025            David L. Nicholson, Jefferson Circuit Clerk

Divisional Commander administers the mission of The Salvation Army in Kentucky and Tennessee and is responsible to the Southern Territory Commander.

5.    Acts complained of herein occurred in, among other locations, Jefferson County, Kentucky, and all damages are in excess of the jurisdictional limits of this Court.

## FACTS

6.    In the United States, the Salvation Army is comprised of four separate corporate entities, including Defendant Southern Territory, the Central Territory, the Western Territory, and the Eastern Territory.

7.    Salvation Army International General appoints a Commander, who is the head of Defendant Salvation Army USA. The Commander is responsible for leading The Salvation Army in the USA as well as communicating directives that come from Salvation Army International to the four US territories and then ensuring compliance with those directives.

8.    Upon information and belief, in 2005, the Salvation Army issued a National Policy Statement on Sexual Abuse of Children. It stated: "The Army recognizes the intractable nature of such forms of sexual abuse and the dire threat that perpetrators represent to the children in our care, not to mention the impact their actions may have on the reputation of the Army itself or the extent to which these behaviors may render the organization legally liable. It is, therefore, the considered policy of The Salvation Army in the United States of America that it will not knowingly expose children in any of its programs to any individual where there

3

Filed            25-CI-002314    03/26/2025            David L. Nicholson, Jefferson Circuit Clerk

is any reasonable suspicion of pedophilia in his or her past. The Salvation Army administration will respond promptly to all charges of sexual abuse of children by the following process: Thoroughly investigate; Remove the individual when there is a reasonable suspicion of sexual abuse of children; comply with all laws regarding the reporting of such charges; Reach out to the children and their families with compassion for their spiritual and emotional well-being, and; With due regard for the privacy of the individuals, deal as openly as possible with members of the community about the charges."

9.    Upon information and belief, the 2005 Salvation Army's National Policy Statement on Sexual Abuse of Children also established territorial registries. These registries would contain, "[T]he names of individuals who in the past have been associated with The Salvation army in any capacity ... against whom complaints of sexual abuse of children have been made where there is reasonable suspicion of such abuse. . . . Employees ... against whom complaints of sexual abuse of children have been made where there is reasonable suspicion of such abuse MUST be listed in the Registry. . . . Applicants for employment ... who will be involved with children will be cleared in advance with the Registry. . . . Where a name is included in the Registry, the Secretary for Personnel will recommend rejection of the application without explanation."

10.    Upon information and belief, on or about 2010, the Eastern Territory hired Joel Collier (hereinafter "Collier" or "Divisional Music Director Joel Collier") as a camp leader.

4

11.     Upon information and belief, on or between 2010 and 2014, Collier was working as a staff member at an Eastern Territory music camp. Late one night, Collier sent graphic sexual texts to a minor, female camper.

12.     Upon information and belief, after the Eastern Territory was made aware of Collier's texts, they terminated Collier and placed his name on their territorial registry.

13.     Upon information and belief, as mandated in the 2005 National Policy Statement on Sexual Abuse of Children, each of the four Salvation Army corporations maintains a territorial registry that includes the names of individuals determined to be a danger to children. Each name listed on a territorial registry has a corresponding file that outlines the factual basis for its inclusion. The information in the registries is shared among the four entities to prevent harmful individuals from being transferred between territories.

14.     Upon information and belief, around 2015, Collier applied for an open employment position in Defendant Southern Territory.

15.     Upon information and belief, when Defendant Southern Territory learned that Collier was on the Eastern Territory's registry, they succeeded in removing Collier from the Eastern Territory registry. In a letter dated September 23, 2015, Colonel F. Bradford Bailey, the Chief Secretary for Defendant Southern Territory's Commander, acknowledged that Collier had been put on the Eastern Territory's registry for his sexually graphic texts with a "minor female." Colonel Bailey informed Lt. Colonel John Needham, the Personnel Secretary, that Defendant

5

Filed                25-CI-002314    03/26/2025            David L. Nicholson, Jefferson Circuit Clerk

Southern Territory's Commissioner Don Bell had determined that "no additional sanctions regarding Mr. Collier's participation in Salvation Army program and activities are required." Defendant Southern Territory subsequently removed Collier from the Eastern Territory's Registry, even though they had no authority to do so. The Eastern Territory strongly disagreed with this decision and warned the Southern Territory not to hire Collier. Defendant Salvation Army USA's Commander had the responsibility to oversee the registries, but there is no evidence that the Commander was fulfilling his leadership duty in this instance.

16. Upon information and belief, Collier then attempted to be hired by both the Central and Western territories. Collier applied for employment to both territories but was rejected based on his past conduct involving the minor female.

17. Collier then re-applied to work in Defendant Southern Territory as the Divisional Musical Director. With full knowledge of his prior graphic sexual texts with a minor female, and after having his named removed from the Eastern Territory Registry, Defendant Southern Territory hired him and placed him over minors, including females.

18. As the Divisional Music Director, Collier was tasked with establishing and leading faith-based music ministry programs, attending music camps, and serving as a leader in Defendant K/T Division's band and chorus. Defendant Southern Territory is a church and its music programs are considered ministry. As such, Collier was also tasked with the spiritual discipleship, mentorship, and counseling of the minors under his care.

6

Filed                25-CI-002314    03/26/2025            David L. Nicholson, Jefferson Circuit Clerk

19.    Prior to 2016, and at all times relevant here, Defendant Southern Territory knew that Collier posed a danger to children and young adults; nevertheless, he was placed in positions that gave him unfettered access to them as both a musical and spiritual leader.

20.    Prior to 2016, and at all times relevant herein, Defendant Southern Territory represented to Salvation Army families that Collier was safe to work with children.

21.    In 2016, when she was fourteen years old, the Plaintiff and her mother moved from Boston, Massachusetts, to Nashville, Tennessee. Riley's father remained in Massachusetts while searching for employment in Tennessee, as her brother had just started school at the University of Massachusetts. Riley found herself in a new place, feeling lonely and extremely vulnerable because she had little support and no friends.

22.    In February 2017, after Collier was hired by Defendant Southern Territory, he conducted his first rehearsal as the Music Director at a Salvation Army campground in Burkesville, Kentucky. Riley attended that rehearsal as a student musician under Collier's discipleship and care.

23.    During that weekend, Collier intentionally established relationships with the young adults he would work with in his new position. Although Riley was significantly younger than Collier's other students, he paid special attention to her and ensured he obtained her phone number before the end of the weekend. This was

7

the beginning of Collier's common scheme or plan of dismantling Riley's capacity to consent and sexually victimizing her.

24.     Over the course of the next few months, Collier texted Riley often, trying to convince her to attend Defendant KT/TN Division's local music camp that summer, which offered "special privileges."

25.     Although Riley did not attend Collier's local camp that summer, she participated in the Southern Territory's Territorial Music Institute (TMI) in Texas. TMI is an intensive music camp that attracts student musicians from across the Salvation Army Southern Territory. As the Music Director for K/T, Collier brought his student delegates, including Riley, to the camp.

26.     Throughout that week, Collier shared stories of his youth with Riley and the other Salvation Army delegates from Kentucky and Tennessee. Many of these stories recounted how he engaged in various sexual endeavors without his parents, bosses, or pastors ever discovering them. Collier employed this classic form of grooming involving developing trust and keeping secrets to earn the admiration and trust of these young people, who viewed him as "cool."

27.     Grooming involves "manipulative behaviors that the abuser uses to gain access to a potential victim, coerce them to agree to the abuse, and reduce the risk of being caught." A typical pattern of grooming involves, "victim selection, gaining access and isolating the victim, trust development and keeping secrets,

8

Filed                25-CI-002314    03/26/2025              David L. Nicholson, Jefferson Circuit Clerk

desensitization to touch and discussion of sexual topics, attempts by abusers to make their attempts seem natural."[1]

28.    These grooming tactics resulted in many of the minor delegates becoming comfortable around Collier and beginning to open up to him about very personal issues, including but not limited to sexual matters. Riley left that music camp believing Collier was a mentor and counselor she could trust as she struggled with her recent move to Tennessee.

29.    After the camp ended, Collier texted Riley continuously. He quickly began to sexualize these text conversations, as the next step in his common scheme or plan to dismantle Riley's capacity to consent and sexually victimizing her

30.    In the first of these sexualized texting conversations with Riley, Collier asked Riley about her shaving habits regarding her genital area. He expressed his preference for sexual partners to "groom themselves."

31.    Over time, the graphic nature of Joel Collier's messages to Riley intensified to the point that he was telling her what type of sexual acts he expected from her when she turned eighteen. In fact, Joel Collier made it very clear to Riley that she would need to perform these sexual acts if she wanted to remain in his good favor.

32.    Interspersed within these graphic sexual text conversations were messages aimed at further fostering Riley's trust and emotional dependence, allowing Collier to erode her agency and ability to refuse his sexual demands.

---

[1] https://rainn.org/news/grooming-know-warning-signs

9

33.    Collier also engaged in several other grooming tactics with minor Riley over the next four years as part of his common scheme or plan, including but not limited to:

a.    Sharing intimate details about his vulnerabilities, including his "unhappy marriage" and experiences of sexual abuse by his brother during childhood, to create a trauma bond with Riley[2];

b.    Encouraging Riley to share her daily life, insecurities, and vulnerabilities with him;

c.    Counseling Riley about spiritual and non-spiritual matters, such as relationships with her friends and parents and ongoing anxiety issues;

d.    Texting Riley at all hours of the day and night;

e.    Telling Riley that no one understood her like he did, and that Riley understood him like nobody else;

f.    Advising Riley on sexual and intimacy matters in relationships with boyfriends, even suggesting that she record her interactions with them and share the recordings, all under the guise of providing guidance for improvement;

g.    Suggesting that he and Riley participate in sexual bondage activities after Riley expressed her anxiety about sexual intimacy;

---

[2] A trauma bond occurs in an abusive relationship, wherein the victim forms an emotional bond with the perpetrator. [See Sanchez RV, Speck PM, Patrician PA (2019). "A Concept Analysis of Trauma Coercive Bonding in the Commercial Sexual Exploitation of Children". Journal of Pediatric Nursing. **46**. Amsterdam, Netherlands: Elsevier: 48–54.]

10

h.    Using private details Riley had previously shared with him to coerce her to send him intimate photographs of herself;

i.    Granting Riley "special privileges" at summer camp and year-round band programs with the understanding that all of this was leading to a physical sexual relationship;

j.    Instructing Riley to send him pictures of the outfits she was wearing;

k.    Building a trusting relationship with Riley's mother to secure her ongoing approval for Riley to participate in K/T Division music and camp programs, which allowed him to spend significant time with the Plaintiff without raising suspicion or provoking disapproval.

34.    As a result of Collier's grooming and manipulation, all of Riley's defenses and boundaries were destroyed. She had shared every aspect of her life with him and became solely dependent on him.

35.    Collier defined reality for Riley, teaching her that his sexualized conversations and the expectation for her to have intercourse with him once she turned eighteen (18) were typical adult conversations, expectations, and behaviors.

36.    On or about 2018, Riley's pastor, Sara Orozco, filed a Safe from Harm complaint against Collier for texting Riley when she was a minor. Upon information and belief, no one from Defendant K/T Division ever followed up on that complaint.

37.    On or about March 2019, Riley's youth pastor, Candell Rainey, filed a Safe from Harm complaint against Collier for keeping Riley out beyond curfew and

11

Filed        25-CI-002314    03/26/2025        David L. Nicholson, Jefferson Circuit Clerk

for letting her engage in card games with adults in his hotel room when she was a minor and without informing her leaders. Upon information and belief, no one from Defendant K/T Division ever followed up on that complaint.

38.    In the summer of 2019, Sargeant Tom Freeman raised concerns to the KT Divisional Youth Secretary, Major Matt Cunningham, stating that something "was wrong" with Music camp and the Colliers.

39.    During the summer of 2019, when Riley was seventeen (17) years old, Collier was alone with Riley as he drove a Southern Territory equipment truck. Being alone with a minor was a clear violation of the Salvation Army Child Protection Policies. While driving the truck, Collier reached across the seat and fondled Riley's vagina.

40.    Soon after the above-referenced offense, Collier told Riley that he loved her, and then sent her a nude photograph of his wife. He informed Riley that she had to maintain the trajectory of their "relationship" towards intercourse after she turned eighteen (18).

41.    By March 2020, on the eve of her eighteenth birthday, Riley had been completely stripped of her agency as a result of being continuously groomed and sexually victimized by Collier for years. She felt trapped and terrified at the thought of being coerced into intercourse with him. Collier had shattered her sense of self-worth, telling her she was a "challenge" and that no one else would want her but him.

42.    On March 27, 2020, the day Riley turned eighteen (18), Collier and his twin brother texted her separate unsolicited sexually explicit videos showing each of

12

them masturbating. He was still the Divisional Musical Director for Defendant Southern Territory, counseling and mentoring Riley in that position.

43. Collier consistently told Riley that he loved her. When she did not reciprocate, he reassured her that she just needed more time. As a result of Collier's grooming, Riley trusted him over her own feelings.

44. In July 2020, Riley participated in Defendant K/T's traveling music camp. During a weekend retreat at the Burkesville camp location, Collier repeatedly initiated sexual contact. He started by touching Riley's foot and grabbing her thigh under the table. Each time, Riley messaged Collier to tell him to stop. She also communicated with him in person and asked him to stop. However, Collier continued to touch Riley's foot and grab her thigh under the table. It seemed virtually impossible for Riley to get him to stop without drawing the attention of everyone in the room, which would have caused her significant embarrassment amongst her peers. Toward the end of the weekend, Collier took Riley to a small room where he closed the door and fondled and kissed her while she cried. Riley finally asked Collier if she could leave. He gave her his permission, and she ran back to her room.

45. In December 2020, Riley attempted to take her own life as a result of Collier's ongoing abuse.

46. Over the course of the next two (2) years, as a result of Collier's common scheme and plan of dismantling Riley's capacity to consent and sexually victimizing her beginning when she was fourteen (14) years old, Collier repeatedly sexually abused Riley. This included non-consensual intercourse and perverse, violent, and

13

obscene sexual acts at various locations in Kentucky and Tennessee, including on property owned by the Southern Territory.

47.     Beginning in the fall of 2020 and continuing through 2021, as he continued serving as the Divisional Musical Director for Defendant Southern Territory, Collier began sharing his pedophilic thoughts and desires with Riley and asked her to contribute to them, including but not limited to:

    a.     Telling Riley about times he had been alone with her as a minor and struggled to restrain himself from touching her;

    b.     Directing Riley to describe herself in great physical detail when she was a child between the ages of seven (7) and nine (9);

    c.     Directing Riley to send pictures of herself as a young child, with a particular focus on photos where she was wearing a bathing suit;

    d.     Telling Riley that it was normal for men to have pedophilic "kinks and fetishes," but they had unfortunately become taboo in our society;

    e.     Telling Riley that laws criminalizing pedophilic thoughts and desires were suggestions "like speed limits";

    f.     Sending Riley numerous photographs of child pornography that he found online and asking her to pick a "favorite"; and,

    g.     Sharing his fantasies of raping his unborn son once he reached five (5) years old.

48.     Although Riley was alarmed by Collier's pedophilic conduct, he convinced her that she was naïve and that it was a normal part of the adult world she

14

Filed                25-CI-002314    03/26/2025              David L. Nicholson, Jefferson Circuit Clerk

had not yet encountered. Collier's common plan and scheme of grooming and abuse had profoundly diminished Riley's ability to question him or trust herself.

49.    In an attempt to conceal his actions, Collier instructed Riley to delete any evidence related to his pedophilic comments and interests so that her mother would not discover them.

50.    In February 2021, Riley once again attempted to take her own life after Collier told her that he "owed it to his wife to try and make it work with her." Collier had successfully groomed and abused Riley to accept that he was the only person she had and that she could not survive without him.

51.    In April 2021, Riley's parents learned for the first time about the sexual abuse Defendant Collier perpetrated against Riley. They immediately reported it to the Salvation Army.

52.    In August 2021, after reporting Collier's sexual abuse to the Salvation Army, Riley's parents learned for the first time that Defendant Southern Territory had known about Collier's sexually graphic texts with the minor female at the camp in the Eastern Territory, that Defendant Southern Territory had removed Collier's name from the Eastern Territory's registry, and that they had hired him and placed him in positions of authority over children, despite knowing that he was a danger to them.

## THE LAW

53.    KRS 510.010 defines sexual contact as "the touching of a person's intimate parts or the touching of the clothing or other material intended to cover the

15

immediate area of a person's intimate parts, if that touching can be construed by a reasonable person as being done:

(a) For the purpose of sexual arousal or gratification of either party;

(b) For a sexual purpose; or

(c) In a sexual manner for the purpose of:

    1. Exacting revenge or retribution;

    2. Humiliating or degrading; or

    3. Punishment."

54.  KRS 510.110(1)(a) establishes that "a person is guilty of sexual abuse in the first degree when:

(a) He or she subjects another person to sexual contact by forcible compulsion."

55.  KRS 510.130 establishes that "a person is guilty of sexual abuse in the third degree when he or she subjects another person to sexual contact without the latter's consent."

56.  KRS 413.249(1) defines "Childhood sexual assault or abuse" as "an act or series of acts against a person less than eighteen (18) years old and which meets the criteria defining a misdemeanor or felony in (1) KRS Chapter 510.

57.  KRS 413.249(5) establishes that "a victim of childhood sexual assault or abuse shall not have a cause of action against a third party, unless the third party failed to act as a reasonable person or entity in complying with their duties to the victim."

16

## COUNT I – NEGLIGENCE

58.    Plaintiff restates, reiterates, and incorporates herein each and every allegation set forth above.

59.    Collier sexually abused Plaintiff when he had sexual contact with her by forcible compulsion under KRS 510.110(1) and when he had sexual contact with her without her consent under KRS 110.130. All of Collier's acts of sexual abuse between 2016 and 2021 were part of Collier's common scheme or plan of dismantling Riley's capacity to consent and sexually victimizing her and should be treated as a single claim constituting childhood sexual assault or abuse under KRS 413.249(1).

60.    Defendants owed Plaintiff a duty to exercise reasonable care to adopt and/or enforce policies that would protect her from sexual predators and to properly investigate and act upon reports of abuse to law enforcement under KRS 600.020 when it was suspected to have occurred under the auspices of The Salvation Army or by Salvation Army officials and/or employees.

61.    Defendants are liable for the sexual abuse of Plaintiff that occurred and continued because of Defendants' negligence and complete disregard for the safety of Plaintiff who had been entrusted into their care.

62.    The Defendants were on actual and/or constructive notice that Collier was a sexual offender because of his prior placement on the Territorial Registry and his original rejection due to information conveyed to Defendant Southern Territory by the Eastern Territory.

17

63.    Defendants had actual and/or constructive knowledge of the prevalence of sexual predation and abuse of minors in faith-based settings, based on the widely available information to all faith-based organizations and the public at large. Defendant Salvation Army USA recognized the need to protect youth in faith-based organizations from sexual abuse as early as 2005 when the Salvation Army issued its National Policy Statement on Sexual Abuse of Children

64.    Defendants breached a duty owed to the Plaintiff by failing to properly adopt and enforce child sex abuse policies, including the mandatory enforcement of those policies for all employees and personnel, to prevent the sexual abuse of minors.

65.    Defendants Southern Territory and K/T Division breached their duties to Plaintiff by violating The Salvation Army USA policies, unilaterally removing Collier's name from the Territorial Registry, and hiring him to work with children.

66.    Defendant Salvation Army USA breached its duty to Plaintiff by failing to require Defendants Southern Territory and K/T Division to adopt and follow the National Policy Statements on Sexual Abuse of Children, as well as the HR policy requirements that mandate background checks for employees. Moreover, Defendant Salvation Army USA further breached its duty to Plaintiff by maintaining a Territorial Registry that allowed one territory to unilaterally remove a name placed on it by another territory.

67.    Defendants breached duties owed to Plaintiff by failing to adopt and/or enforce policies which would have precluded known or suspected sexual predators'

18

Filed                25-CI-002314    03/26/2025              David L. Nicholson, Jefferson Circuit Clerk

unsupervised access to minors at Defendants'-sponsored events, on the property of Defendants, in Defendants' vehicles, and other various locations.

68. Defendants knew or should have known that making Plaintiff, a minor at the time, available to a known or suspected sexual predator breached a duty of care owed to the minors.

69. Defendants knew or should have known that engaging in the concealment of prior sexual abuse of a minor breached a duty of care owed to Plaintiff.

70. Defendants breached their duty to prevent and/or stop Divisional Music Director Joel Collier from abusing Plaintiff.

71. As a direct and proximate cause of these breaches of duty, Plaintiff suffered and continues to suffer physical and emotional distress, shock, embarrassment, loss of self-esteem, disgrace, humiliation, loss of faith, loss of community, loss of relationship, and loss of enjoyment of life; has sustained and will continue to sustain loss of earning capacity; and has incurred and will continue to incur expenses for medical and psychological treatment, therapy and counseling.

## COUNT II – NEGLIGENT HIRING, RETENTION, AND SUPERVISION

72. Plaintiff restates, reiterates, and incorporates herein each and every allegation set forth above.

73. In general, the possibility that a youth program leader employed by a faith-based organization who spends a significant amount of time connecting and working with youth might engage in an impermissible relationship with a child under age 18 was, or should have reasonably been, foreseeable by Defendants, given the

Filed                25-CI-002314    03/26/2025              David L. Nicholson, Jefferson Circuit Clerk

prevalence of such types of impermissible relationships involving ministry members and minors across the United States and the fact that KRS 510.060(1) and KRS 532.045 exists specifically to criminalize sexual intercourse between a person in a position of authority and a minor.

74.    Defendants had a special relationship with Plaintiff such that they owed Plaintiff a duty of reasonable care with regard to risks arising out of the relationship, including the risk that employees of Defendants, including Divisional Music Director Joel Collier, could harm Plaintiff.

75.    Defendants likewise owed a legal duty to Plaintiff to exercise reasonable care in hiring and training their employees, agents, and program leaders and to adopt appropriate policies to avoid and preclude the development of improper sexual relationships under the age of 18. Defendants had a further duty to adopt appropriate policies for supervision, detection, investigation, and reporting of any improper relationships with youth.

76.    Defendants negligently hired, trained, and retained a known sexual offender to serve in capacities with authority over and unsupervised contact with minors, including Plaintiff.

77.    Defendants negligently failed to supervise those to whom Defendants entrusted the care of minors, including Divisional Music Director Joel Collier.

78.    Defendants permitted and/or failed to prevent the sexual abuse committed by Divisional Music Director Joel Collier against the Plaintiff.

79. Defendants were on actual or constructive notice of the acts being perpetrated by Divisional Music Director Joel Collier, yet refused to remove him from a position where he was in contact with minors, including Plaintiff. Such failures and breaches of duty constitute negligent retention.

80. Defendants' negligence in failing to adopt and/or enforce proper policies and in hiring, training, retaining, and supervising Divisional Music Director Joel Collier caused injury to Plaintiff, who has suffered and continues to suffer physical and emotional distress, shock, embarrassment, loss of self-esteem, disgrace, humiliation, loss of faith, loss of community, loss of relationship, and loss of enjoyment of life; has sustained and will continue to sustain loss of earnings and earning capacity; and has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling, all in excess of the jurisdictional limits of this Court.

### COUNT III – FRAUDULENT MISREPRESENTATION
(Defendants Southern Territory and K/T Division)

81. Plaintiff restates, reiterates, and incorporates herein each and every allegation set forth above.

82. Defendants Southern Territory and K/T Division represented to Plaintiff that Collier was safe to work with children.

83. The representation was false because Collier had sent sexually explicit texts to a minor camper in the Eastern Territory.

84. Defendants Southern Territory and K/T Division knew that their representation was false because they had actual knowledge that Collier's name was

21

on the Eastern Territory Registry for having sent sexually explicit texts to a minor camper.

85.    Defendants Southern Territory and K/T Division made the representation with the intention of inducing Plaintiff to rely on Collier as a trustworthy music teacher, counselor and spiritual authority figure.

86.    Tragically, Plaintiff acted in reliance on Defendants Southern Territory and K/T Division's misrepresentation by trusting Collier.

87.    As a direct and proximate cause of the foregoing wrongful conduct, Plaintiff has sustained and will continue to sustain severe physical injuries, severe emotional distress, economic losses and other damages for which she is entitled to compensatory and equitable damages and declaratory relief in an amount to be proven at trial. Defendants are liable to Plaintiff for all general, special, punitive, and equitable relief to which she is entitled by law.

## COUNT IV – FRAUDULENT OMISSION
### (Defendants Southern Territory and K/T Division)

88.    Plaintiff restates, reiterates, and incorporates herein each and every allegation set forth above.

89.    Defendants Southern Territory and K/T Division had a duty to disclose to Plaintiff that Collier was on the Eastern Territory Registry for sending sexually explicit texts to a minor camper.

90.    Defendants Southern Territory and K/T Division covered up Collier's history as a sexual predator and violated mandatory reporting laws that are designed to protect the safety of minors when they failed to disclose that fact when they

22

removed Collier's name from the Eastern Territory Registry and hired him as their Divisional Music Director.

91. Defendants Southern Territory and K/T Division's failure to disclose to Plaintiff that Collier was on the Eastern Territory Registry for sending sexually explicit texts to a minor female camper induced Plaintiff to trust Collier, allow him to be alone with her, and to open up to him for counsel and mentorship.

92. As a direct and proximate cause of the foregoing wrongful conduct, Plaintiff has sustained and will continue to sustain severe physical injuries, severe emotional distress, economic losses and other damages for which she is entitled to compensatory and equitable damages and declaratory relief in an amount to be proven at trial. Defendants are liable to Plaintiff for all general, special, punitive, and equitable relief to which she is entitled by law.

## COUNT V – AIDING AND ABETTING HUMAN TRAFFICKING
(Defendants Southern Territory and K/T Division)

93. Plaintiff restates, reiterates, and incorporates herein each and every allegation set forth above.

94. KRS 529.010(3)(b) and (C) defines commercial sexual activity as:

(a) Any sex act, for which anything of value is given to, promised to, or received by any person; or

(b) Participation in the production of obscene material as set out in KRS Chapter 531.

23

**Filed**                25-CI-002314    03/26/2025          David L. Nicholson, Jefferson Circuit Clerk

95.    Collier committed human trafficking in violation of KRS 529.010 when he forced Riley, who was a minor at the time, to engage in a sex act with the promise of his continued favor and special privilege at music camp and when he forced Riley to send him sexually explicit photos.

96.    Defendants Southern Territory and K/T Division gave substantial assistance and/or encouragement to Collier's trafficking by intentionally concealing Collier's history as a sexual offender who produced and provided obscene material to a minor female and then knowingly placing him in a position of authority and influence over the Plaintiff, also a minor female.

97.    As a direct and proximate cause of the foregoing wrongful conduct, Plaintiff has sustained and will continue to sustain severe physical injuries, severe emotional distress, economic losses and other damages for which she is entitled to compensatory and equitable damages and declaratory relief in an amount to be proven at trial. Defendants are liable to Plaintiff for all general, special, punitive, and equitable relief to which she is entitled by law.

## COUNT VII – NEGLIGENT/INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (Defendants Southern Territory and K/T Division)

98.    Plaintiff restates, reiterates, and incorporates herein each and every allegation set forth above.

99. The Plaintiff has endured significant stress and severe emotional distress due to the outrageous and intolerable conduct of the Defendants' Southern Territory

24

Filed    25-CI-002314    03/26/2025    David L. Nicholson, Jefferson Circuit Clerk

and K/T Division, which offends generally accepted standards of decency and morality.

100. The actions of Defendants' Southern Territory and K/T Division were intentional, reckless, and/or negligent, and Defendants knew or should have known that injury and severe emotional distress would likely result from their actions.

101. Defendants Southern Territory and K/T Division knew or should have known that engaging in concealment of Collier's prior sexual abuse of minors and placing Plaintiff under Collier's supervision and care breached a duty of care to Plaintiff.

102. Defendants' Southern Territory and K/T Division's acts and omissions, which led to the hiring of Divisional Music Director Joel Collier—despite prior warnings and in violation of Salvation Army policy—thereby bringing a sexual predator into the life of an unsuspecting teenager, were so extreme and outrageous that they violated human dignity and offended generally accepted standards of decency and morality.

103. As a direct and proximate cause of the foregoing wrongful conduct, Plaintiff has suffered and continues to suffer extreme physical and emotional distress, shock, embarrassment, loss of self-esteem, disgrace, humiliation, loss of faith, loss of community, loss of relationship, and loss of enjoyment of life; has sustained and will continue to sustain loss of earnings and earning capacity; and has incurred and will continue to incur expenses for medical and psychological treatment, therapy and counseling.

25

## COUNT VIII – BREACH OF FIDUCIARY DUTY

104.    Plaintiff restates, reiterates, and incorporates herein each and every allegation set forth above.

105.    Collier assumed a fiduciary duty by soliciting Riley's trust and confidence in him as a mentor and counselor.

106.    A fiduciary relationship was created between the Defendants and the minor Plaintiff when their Divisional Music Director provided her counseling and mentorship.

107.    Defendants breached their fiduciary duty to Plaintiff when Collier engaged in sexual contact with her by forcible compulsion under KRS 510.110(1) and when he had sexual contact with her without her consent under KRS 110.130.

108.    Defendants further breached their fiduciary duty to Plaintiff by removing a known sex offender from their internal registry, hiring him, and placing him in a position of responsibility over minors, holding him out to be qualified to engage in counseling and mentorship.

109.    As a direct and proximate cause of the foregoing wrongful conduct, Plaintiff has sustained and will continue to sustain severe physical injuries, severe emotional distress, economic losses and other damages for which she is entitled to compensatory and equitable damages and declaratory relief in an amount to be proven at trial. Defendants are liable to Plaintiff for all general, special, punitive, and equitable relief to which she is entitled by law.

26

WHEREFORE, the Plaintiff, Riley Neville, respectfully demands the following:

1.    Judgment against Defendants in favor of Plaintiff, Riley Neville, in an amount in excess of the jurisdictional limit of this Court, said amount to be that which is determined as being fair and reasonable by all the evidence, for the following elements of damages:

a.    Trial by Jury;

b.    Past mental and physical pain, suffering and inconvenience;

c.    Future mental and physical pain, suffering and inconvenience;

d.    Past and future medical expenses;

e.    Destruction of Plaintiff's power to labor and earn money;

f.    Miscellaneous expenses incurred by Plaintiff necessitated by the negligent/intentional acts of Defendants;

g.    Punitive damages;

h.    Pre-judgment and post-judgment interest;

i.    Plaintiff's costs expended herein, including reasonable attorneys' fees;

j.    And any and all other relief to which Plaintiff may be entitled by law.

27

Respectfully submitted,

/s/ Mark P. Bryant

Mark P. Bryant
Emily Ward Roark

BRYANT LAW CENTER
601 Washington Street
Paducah, Kentucky 42001
Phone: (270) 442-1422
Fax: (270) 443-8788
mark.bryant@bryantpsc.com
emily.roark@bryantpsc.com

-and-

David G. Bryant
DAVID BRYANT LAW, PLLC
600 W. Main Street, Suite 100
Louisville, KY 40202
Phone: (502) 540-1221
Fax: (502) 540-1200
david@davidbryantlaw.com

-and-

Basyle Tchividjian
BozLaw, P.A.
112 West New York Avenue,
Suite 207
DeLand, FL. 32720
Telephone: (386) 682-5540
boz@bozlawpa.com
*Pro Hac Vice Pending*

Counsel for Plaintiff

28

Filed          25-CI-002314          03/26/2025          David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL
DOCUMENT
04/21/2025 02:59:27
PM
86968-1

**COMMONWEALTH OF KENTUCKY**
**JEFFERSON CIRCUIT COURT**
**CIVIL ACTION NO _____**
**DIVISION \_\_\_**

RILEY NEVILLE
PLAINTIFF

v.

THE SALVATION ARMY NATIONAL CORPORATION
615 SLATERS LN.
ALEXANDRIA, VA 22314

       SERVE:    The Salvation Army National Corporation
                    4701 Cox St., Suite 285
                    Glen Allen, VA 23060

and

THE SALVATION ARMY USA SOUTHERN TERRITORY
DBA THE SALVATION ARMY
1424 NORTHEAST EXPRESSWAY
ATLANTA, GA 30329

       SERVE:    CT Corporation System
                    306 W. Main St.
                    Suite 512
                    Frankfort, KY 40601

and

THE SALVATION ARMY KENTUCKY AND TENNESSEE DIVISION
DEFENDANTS

       SERVE:    The Salvation Army Kentucky and Tennessee Division
                    2110 Wickham Place
                    Louisville, Kentucky 40245

///
///
///

Presiding Judge: HON. TRACY E. DAVIS (630452)

COM : 000001 of 000028

Filed        25-CI-002314    03/26/2025        David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL
DOCUMENT
04/21/2025 02:59:27
PM

## COMPLAINT

Comes Plaintiff, Riley Neville (hereinafter "Riley"), for her Complaint against Defendants, The Salvation Army National Corporation (hereinafter "Defendant Salvation Army USA"), The Salvation Army USA – Southern Territory (hereinafter "Defendant Southern Territory"), and The Salvation Army Kentucky and Tennessee Division (hereinafter "Defendant K/T Division"), states as follows:

## PARTIES

1.    Plaintiff, Riley, is and was at all times relevant herein, a resident of Mt. Juliet, Tennessee.

2.    Salvation Army USA is a foreign corporation registered with the Virginia Secretary of State whose principal place of business is 615 Slaters Ln., Alexandria, VA 22314. At all times relevant herein, Defendant Salvation Army USA Commander had authority over Defendant Southern Territory to communicate and ensure compliance with directives given by The Salvation Army International.

3.    The Southern Territory is a foreign corporation registered with the Kentucky Secretary of State and whose principal place of business is 1424 Northeast Expressway, Atlanta, GA 30329. At all times relevant herein, Defendant K/T Division is under the jurisdiction and authority of Defendant Southern Territory and abides by their rules and policies.

4.    The K/T Division is an unincorporated entity with a principal place of business at 2110 Wickham Place, Louisville, Kentucky 40245. Defendant K/T Division is the local representative body of Defendant Southern Territory. The K/T

2

Presiding Judge: HON. TRACY E. DAVIS (630452)

COM : 000002 of 000028

Filed        25-CI-002314        03/26/2025        David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL
DOCUMENT
04/21/2025 02:59:27
PM
86968-1

Divisional Commander administers the mission of The Salvation Army in Kentucky and Tennessee and is responsible to the Southern Territory Commander.

5.    Acts complained of herein occurred in, among other locations, Jefferson County, Kentucky, and all damages are in excess of the jurisdictional limits of this Court.

## FACTS

6.    In the United States, the Salvation Army is comprised of four separate corporate entities, including Defendant Southern Territory, the Central Territory, the Western Territory, and the Eastern Territory.

7.    Salvation Army International General appoints a Commander, who is the head of Defendant Salvation Army USA. The Commander is responsible for leading The Salvation Army in the USA as well as communicating directives that come from Salvation Army International to the four US territories and then ensuring compliance with those directives.

8.    Upon information and belief, in 2005, the Salvation Army issued a National Policy Statement on Sexual Abuse of Children. It stated: "The Army recognizes the intractable nature of such forms of sexual abuse and the dire threat that perpetrators represent to the children in our care, not to mention the impact their actions may have on the reputation of the Army itself or the extent to which these behaviors may render the organization legally liable. It is, therefore, the considered policy of The Salvation Army in the United States of America that it will not knowingly expose children in any of its programs to any individual where there

Presiding Judge: HON. TRACY E. DAVIS (630452)

COM : 000003 of 000028

3

Filed            25-CI-002314        03/26/2025        David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL
DOCUMENT

PM                                                              04/21/2025 02:59:27

86968-1

is any reasonable suspicion of pedophilia in his or her past. The Salvation Army administration will respond promptly to all charges of sexual abuse of children by the following process: Thoroughly investigate; Remove the individual when there is a reasonable suspicion of sexual abuse of children; comply with all laws regarding the reporting of such charges; Reach out to the children and their families with compassion for their spiritual and emotional well-being, and; With due regard for the privacy of the individuals, deal as openly as possible with members of the community about the charges."

9.      Upon information and belief, the 2005 Salvation Army's National Policy Statement on Sexual Abuse of Children also established territorial registries. These registries would contain, "[T]he names of individuals who in the past have been associated with The Salvation army in any capacity … against whom complaints of sexual abuse of children have been made where there is reasonable suspicion of such abuse. . . . Employees … against whom complaints of sexual abuse of children have been made where there is reasonable suspicion of such abuse MUST be listed in the Registry. . . . Applicants for employment … who will be involved with children will be cleared in advance with the Registry. . . . Where a name is included in the Registry, the Secretary for Personnel will recommend rejection of the application without explanation."

10.     Upon information and belief, on or about 2010, the Eastern Territory hired Joel Collier (hereinafter "Collier" or "Divisional Music Director Joel Collier") as a camp leader.

Presiding Judge: HON. TRACY E. DAVIS (630452)

COM : 000004 of 000028

4

Filed                25-CI-002314      03/26/2025              David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL
DOCUMENT

PM

04/21/2025 02:59:27

86968-1

11.     Upon information and belief, on or between 2010 and 2014, Collier was working as a staff member at an Eastern Territory music camp. Late one night, Collier sent graphic sexual texts to a minor, female camper.

12.      Upon information and belief, after the Eastern Territory was made aware of Collier's texts, they terminated Collier and placed his name on their territorial registry.

13.     Upon information and belief, as mandated in the 2005 National Policy Statement on Sexual Abuse of Children, each of the four Salvation Army corporations maintains a territorial registry that includes the names of individuals determined to be a danger to children. Each name listed on a territorial registry has a corresponding file that outlines the factual basis for its inclusion. The information in the registries is shared among the four entities to prevent harmful individuals from being transferred between territories.

14.     Upon information and belief, around 2015, Collier applied for an open employment position in Defendant Southern Territory.

15.     Upon information and belief, when Defendant Southern Territory learned that Collier was on the Eastern Territory's registry, they succeeded in removing Collier from the Eastern Territory registry. In a letter dated September 23, 2015, Colonel F. Bradford Bailey, the Chief Secretary for Defendant Southern Territory's Commander, acknowledged that Collier had been put on the Eastern Territory's registry for his sexually graphic texts with a "minor female." Colonel Bailey informed Lt. Colonel John Needham, the Personnel Secretary, that Defendant

Presiding Judge: HON. TRACY E. DAVIS (630452)

COM : 000005 of 000028

5

Filed    25-CI-002314    03/26/2025    David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL
DOCUMENT
04/21/2025 02:59:27
PM
86968-1

Southern Territory's Commissioner Don Bell had determined that "no additional sanctions regarding Mr. Collier's participation in Salvation Army program and activities are required." Defendant Southern Territory subsequently removed Collier from the Eastern Territory's Registry, even though they had no authority to do so. The Eastern Territory strongly disagreed with this decision and warned the Southern Territory not to hire Collier. Defendant Salvation Army USA's Commander had the responsibility to oversee the registries, but there is no evidence that the Commander was fulfilling his leadership duty in this instance.

16.    Upon information and belief, Collier then attempted to be hired by both the Central and Western territories. Collier applied for employment to both territories but was rejected based on his past conduct involving the minor female.

17.    Collier then re-applied to work in Defendant Southern Territory as the Divisional Musical Director. With full knowledge of his prior graphic sexual texts with a minor female, and after having his named removed from the Eastern Territory Registry, Defendant Southern Territory hired him and placed him over minors, including females.

18.    As the Divisional Music Director, Collier was tasked with establishing and leading faith-based music ministry programs, attending music camps, and serving as a leader in Defendant K/T Division's band and chorus. Defendant Southern Territory is a church and its music programs are considered ministry. As such, Collier was also tasked with the spiritual discipleship, mentorship, and counseling of the minors under his care.

6

Presiding Judge: HON. TRACY E. DAVIS (630452)

COM : 000006 of 000028

Filed    25-CI-002314    03/26/2025    David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL
DOCUMENT
04/21/2025 02:59:27
PM
86968-1

Presiding Judge: HON. TRACY E. DAVIS (630452)

COM : 000007 of 000028

19.    Prior to 2016, and at all times relevant here, Defendant Southern Territory knew that Collier posed a danger to children and young adults; nevertheless, he was placed in positions that gave him unfettered access to them as both a musical and spiritual leader.

20.    Prior to 2016, and at all times relevant herein, Defendant Southern Territory represented to Salvation Army families that Collier was safe to work with children.

21.    In 2016, when she was fourteen years old, the Plaintiff and her mother moved from Boston, Massachusetts, to Nashville, Tennessee. Riley's father remained in Massachusetts while searching for employment in Tennessee, as her brother had just started school at the University of Massachusetts. Riley found herself in a new place, feeling lonely and extremely vulnerable because she had little support and no friends.

22.    In February 2017, after Collier was hired by Defendant Southern Territory, he conducted his first rehearsal as the Music Director at a Salvation Army campground in Burkesville, Kentucky. Riley attended that rehearsal as a student musician under Collier's discipleship and care.

23.    During that weekend, Collier intentionally established relationships with the young adults he would work with in his new position. Although Riley was significantly younger than Collier's other students, he paid special attention to her and ensured he obtained her phone number before the end of the weekend. This was

7

Filed    25-CI-002314    03/26/2025    David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL
DOCUMENT
04/21/2025 02:59:27
PM
86968-1

Presiding Judge: HON. TRACY E. DAVIS (630452)

COM : 000008 of 000028

the beginning of Collier's common scheme or plan of dismantling Riley's capacity to consent and sexually victimizing her.

24.    Over the course of the next few months, Collier texted Riley often, trying to convince her to attend Defendant KT/TN Division's local music camp that summer, which offered "special privileges."

25.    Although Riley did not attend Collier's local camp that summer, she participated in the Southern Territory's Territorial Music Institute (TMI) in Texas. TMI is an intensive music camp that attracts student musicians from across the Salvation Army Southern Territory. As the Music Director for K/T, Collier brought his student delegates, including Riley, to the camp.

26.    Throughout that week, Collier shared stories of his youth with Riley and the other Salvation Army delegates from Kentucky and Tennessee. Many of these stories recounted how he engaged in various sexual endeavors without his parents, bosses, or pastors ever discovering them. Collier employed this classic form of grooming involving developing trust and keeping secrets to earn the admiration and trust of these young people, who viewed him as "cool."

27.    Grooming involves "manipulative behaviors that the abuser uses to gain access to a potential victim, coerce them to agree to the abuse, and reduce the risk of being caught." A typical pattern of grooming involves, "victim selection, gaining access and isolating the victim, trust development and keeping secrets,

8

NOT ORIGINAL
DOCUMENT
04/21/2025 02:59:27
PM
86968-1

desensitization to touch and discussion of sexual topics, attempts by abusers to make their attempts seem natural."[1]

28.    These grooming tactics resulted in many of the minor delegates becoming comfortable around Collier and beginning to open up to him about very personal issues, including but not limited to sexual matters. Riley left that music camp believing Collier was a mentor and counselor she could trust as she struggled with her recent move to Tennessee.

29.     After the camp ended, Collier texted Riley continuously. He quickly began to sexualize these text conversations, as the next step in his common scheme or plan to dismantle Riley's capacity to consent and sexually victimizing her

30.    In the first of these sexualized texting conversations with Riley, Collier asked Riley about her shaving habits regarding her genital area. He expressed his preference for sexual partners to "groom themselves."

31.    Over time, the graphic nature of Joel Collier's messages to Riley intensified to the point that he was telling her what type of sexual acts he expected from her when she turned eighteen. In fact, Joel Collier made it very clear to Riley that she would need to perform these sexual acts if she wanted to remain in his good favor.

32.    Interspersed within these graphic sexual text conversations were messages aimed at further fostering Riley's trust and emotional dependence, allowing Collier to erode her agency and ability to refuse his sexual demands.

---

[1] https://rainn.org/news/grooming-know-warning-signs

9

Presiding Judge: HON. TRACY E. DAVIS (630452)

COM : 000009 of 000028

Filed                    25-CI-002314        03/26/2025                David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL
DOCUMENT

PM

04/21/2025 02:59:27

86968-1

33.    Collier also engaged in several other grooming tactics with minor Riley over the next four years as part of his common scheme or plan, including but not limited to:

a.    Sharing intimate details about his vulnerabilities, including his "unhappy marriage" and experiences of sexual abuse by his brother during childhood, to create a trauma bond with Riley[2];

b.    Encouraging Riley to share her daily life, insecurities, and vulnerabilities with him;

c.    Counseling Riley about spiritual and non-spiritual matters, such as relationships with her friends and parents and ongoing anxiety issues;

d.    Texting Riley at all hours of the day and night;

e.    Telling Riley that no one understood her like he did, and that Riley understood him like nobody else;

f.    Advising Riley on sexual and intimacy matters  in relationships with boyfriends, even suggesting that she record her interactions with them and share the recordings, all under the guise of providing guidance for improvement;

g.    Suggesting that he and Riley participate in sexual bondage activities after Riley expressed her anxiety about sexual intimacy;

---

[2]  A trauma bond occurs in an abusive relationship, wherein the victim forms an emotional bond with the perpetrator. [See Sanchez RV, Speck PM, Patrician PA (2019). "A Concept Analysis of Trauma Coercive Bonding in the Commercial Sexual Exploitation of Children". Journal of Pediatric Nursing. **46**. Amsterdam, Netherlands: Elsevier: 48–54.]

10

Presiding Judge: HON. TRACY E. DAVIS (630452)

COM : 000010 of 000028

Filed    25-CI-002314    03/26/2025    David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL
DOCUMENT
04/21/2025 02:59:27
PM
86968-1

h.    Using private details Riley had previously shared with him to coerce her to send him intimate photographs of herself;

i.    Granting Riley "special privileges" at summer camp and year-round band programs with the understanding that all of this was leading to a physical sexual relationship;

j.    Instructing Riley to send him pictures of the outfits she was wearing;

k.    Building a trusting relationship with Riley's mother to secure her ongoing approval for Riley to participate in K/T Division music and camp programs, which allowed him to spend significant time with the Plaintiff without raising suspicion or provoking disapproval.

34.    As a result of Collier's grooming and manipulation, all of Riley's defenses and boundaries were destroyed. She had shared every aspect of her life with him and became solely dependent on him.

35.    Collier defined reality for Riley, teaching her that his sexualized conversations and the expectation for her to have intercourse with him once she turned eighteen (18) were typical adult conversations, expectations, and behaviors.

36.    On or about 2018, Riley's pastor, Sara Orozco, filed a Safe from Harm complaint against Collier for texting Riley when she was a minor. Upon information and belief, no one from Defendant K/T Division ever followed up on that complaint.

37.    On or about March 2019, Riley's youth pastor, Candell Rainey, filed a Safe from Harm complaint against Collier for keeping Riley out beyond curfew and

11

Filed    25-CI-002314    03/26/2025    David L. Nicholson, Jefferson Circuit Clerk

Presiding Judge: HON. TRACY E. DAVIS (630452)

COM : 000011 of 000028

Filed                25-CI-002314        03/26/2025            David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL
DOCUMENT
04/21/2025 02:59:27
PM
86968-1

for letting her engage in card games with adults in his hotel room when she was a minor and without informing her leaders. Upon information and belief, no one from Defendant K/T Division ever followed up on that complaint.

38.     In the summer of 2019, Sargeant Tom Freeman raised concerns to the KT Divisional Youth Secretary, Major Matt Cunningham, stating that something "was wrong" with Music camp and the Colliers.

39.     During the summer of 2019, when Riley was seventeen (17) years old, Collier was alone with Riley as he drove a Southern Territory equipment truck.  Being alone with a minor was a clear violation of the Salvation Army Child Protection Policies. While driving the truck, Collier reached across the seat and fondled Riley's vagina.

40.     Soon after the above-referenced offense, Collier told Riley that he loved her, and then sent her a nude photograph of his wife. He informed Riley that she had to maintain the trajectory of their "relationship" towards intercourse after she turned eighteen (18).

41.     By March 2020, on the eve of her eighteenth birthday, Riley had been completely stripped of her agency as a result of being continuously groomed and sexually victimized by Collier for years.  She felt trapped and terrified at the thought of being coerced into intercourse with him. Collier had shattered her sense of self-worth, telling her she was a "challenge" and that no one else would want her but him.

42.     On March 27, 2020, the day Riley turned eighteen (18), Collier and his twin brother texted her separate unsolicited sexually explicit videos showing each of

12

Filed                25-CI-002314        03/26/2025            David L. Nicholson, Jefferson Circuit Clerk

Presiding Judge: HON. TRACY E. DAVIS (630452)

COM : 000012 of 000028

NOT ORIGINAL
DOCUMENT

04/21/2025 02:59:27
PM

86968-1

them masturbating.   He was still the Divisional Musical Director for Defendant Southern Territory, counseling and mentoring Riley in that position.

43.    Collier consistently told Riley that he loved her. When she did not reciprocate, he reassured her that she just needed more time. As a result of Collier's grooming, Riley trusted him over her own feelings.

44.    In July 2020, Riley participated in Defendant K/T's traveling music camp. During a weekend retreat at the Burkesville camp location, Collier repeatedly initiated sexual contact. He started by touching Riley's foot and grabbing her thigh under the table. Each time, Riley messaged Collier to tell him to stop. She also communicated with him in person and asked him to stop. However, Collier continued to touch Riley's foot and grab her thigh under the table. It seemed virtually impossible for Riley to get him to stop without drawing the attention of everyone in the room, which would have caused her significant embarrassment amongst her peers.  Toward the end of the weekend, Collier took Riley to a small  room where he closed the door and fondled and kissed her while she cried. Riley finally asked Collier if she could leave. He gave her his permission, and she ran back to her room.

45.    In December 2020, Riley attempted to take her own life as a result of Collier's ongoing abuse.

46.    Over the course of the next two (2) years, as a result of Collier's common scheme and plan of dismantling Riley's capacity to consent and sexually victimizing her beginning when she was fourteen (14) years old, Collier repeatedly  sexually abused Riley. This included non-consensual intercourse and perverse, violent, and

13

Presiding Judge: HON. TRACY E. DAVIS (630452)

COM : 000013 of 000028

NOT ORIGINAL
DOCUMENT
04/21/2025 02:59:27
PM
86968-1

obscene sexual acts at various locations in Kentucky and Tennessee, including on property owned by the Southern Territory.

47.    Beginning in the fall of 2020 and continuing through 2021, as he continued serving as the Divisional Musical Director for Defendant Southern Territory, Collier began sharing his pedophilic thoughts and desires with Riley and asked her to contribute to them, including but not limited to:

a.    Telling Riley about times he had been alone with her as a minor and struggled to restrain himself from touching her;

b.    Directing Riley to describe herself in great physical detail when she was a child between the ages of seven (7) and nine (9);

c.    Directing  Riley to send pictures of herself as a young child, with a particular focus on photos where she was wearing a bathing suit;

d.    Telling Riley that it was normal for men to have pedophilic "kinks and fetishes," but they had unfortunately become taboo in our society;

e.    Telling Riley that laws criminalizing pedophilic thoughts and desires were suggestions "like speed limits";

f.    Sending Riley numerous photographs of child pornography that he found online and asking her to pick a "favorite"; and,

g.    Sharing his fantasies of raping his unborn son once he reached five (5) years old.

48.    Although Riley was alarmed by Collier's pedophilic conduct, he convinced her that she was naïve and that it was a normal part of the adult world she

Presiding Judge: HON. TRACY E. DAVIS (630452)

COM : 000014 of 000028

14

Filed                25-CI-002314        03/26/2025                David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL
DOCUMENT
04/21/2025 02:59:27
PM
86968-1

had not yet encountered. Collier's common plan and scheme of grooming and abuse had profoundly diminished Riley's ability to question him or trust herself.

49.    In an attempt to conceal his actions, Collier instructed Riley to delete any evidence related to his pedophilic comments and interests so that her mother would not discover them.

50.    In February 2021, Riley once again attempted to take her own life after Collier told her that he "owed it to his wife to try and make it work with her." Collier had successfully groomed and abused Riley to accept that he was the only person she had and that she could not survive without him.

51.    In April 2021, Riley's parents learned for the first time about the sexual abuse Defendant Collier perpetrated against Riley. They immediately reported it to the Salvation Army.

52.    In August 2021, after reporting Collier's sexual abuse to the Salvation Army, Riley's parents learned for the first time that Defendant Southern Territory had known about Collier's sexually graphic texts with the minor female at the camp in the Eastern Territory, that Defendant Southern Territory had removed Collier's name from the Eastern Territory's registry, and that they had hired him and placed him in positions of authority over children, despite knowing that he was a danger to them.

## THE LAW

53.    KRS 510.010 defines sexual contact as "the touching of a person's intimate parts or the touching of the clothing or other material intended to cover the

Presiding Judge: HON. TRACY E. DAVIS (630452)

COM : 000015 of 000028

15

Filed                25-CI-002314        03/26/2025            David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL
DOCUMENT
04/21/2025 02:59:27
PM
86968-1

immediate area of a person's intimate parts, if that touching can be construed by a reasonable person as being done:

(a) For the purpose of sexual arousal or gratification of either party;

(b) For a sexual purpose; or

(c) In a sexual manner for the purpose of:

1. Exacting revenge or retribution;

2. Humiliating or degrading; or

3. Punishment."

54.    KRS 510.110(1)(a) establishes that "a person is guilty of sexual abuse in the first degree when:

(a) He or she subjects another person to sexual contact by forcible compulsion."

55.    KRS 510.130 establishes that "a person is guilty of sexual abuse in the third degree when he or she subjects another person to sexual contact without the latter's consent."

56.    KRS 413.249(1) defines "Childhood sexual assault or abuse" as "an act or series of acts against a person less than eighteen (18) years old and which meets the criteria defining a misdemeanor or felony in (1) KRS Chapter 510.

57.    KRS 413.249(5) establishes that "a victim of childhood sexual assault or abuse shall not have a cause of action against a third party, unless the third party failed to act as a reasonable person or entity in complying with their duties to the victim."

Presiding Judge: HON. TRACY E. DAVIS (630452)

COM : 000016 of 000028

16

Filed    25-CI-002314    03/26/2025    David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL
DOCUMENT
04/21/2025 02:59:27
PM
86968-1

## COUNT I – NEGLIGENCE

58.    Plaintiff restates, reiterates, and incorporates herein each and every allegation set forth above.

59.    Collier sexually abused Plaintiff when he had sexual contact with her by forcible compulsion under KRS 510.110(1) and when he had sexual contact with her without her consent under KRS 110.130. All of Collier's acts of sexual abuse between 2016 and 2021 were part of Collier's common scheme or plan of dismantling Riley's capacity to consent and sexually victimizing her and should be treated as a single claim constituting childhood sexual assault or abuse under KRS 413.249(1).

60.    Defendants owed Plaintiff a duty to exercise reasonable care to adopt and/or enforce policies that would protect her from sexual predators and to properly investigate and act upon reports of abuse to law enforcement under KRS 600.020 when it was suspected to have occurred under the auspices of The Salvation Army or by Salvation Army officials and/or employees.

61.    Defendants are liable for the sexual abuse of Plaintiff that occurred and continued because of Defendants' negligence and complete disregard for the safety of Plaintiff who had been entrusted into their care.

62.    The Defendants were on actual and/or constructive notice that Collier was a sexual offender because of his prior placement on the Territorial Registry and his original rejection due to information conveyed to Defendant Southern Territory by the Eastern Territory.

Presiding Judge: HON. TRACY E. DAVIS (630452)

COM : 000017 of 000028

17

Filed          25-CI-002314          03/26/2025          David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL
DOCUMENT

04/21/2025 02:59:27
PM

86968-1

63.     Defendants had actual and/or constructive knowledge of the prevalence of sexual predation and abuse of minors in faith-based settings, based on the widely available information to all faith-based organizations and the public at large. Defendant Salvation Army USA recognized the need to protect youth in faith-based organizations from sexual abuse as early as 2005 when the Salvation Army issued its National Policy Statement on Sexual Abuse of Children

64.     Defendants breached a duty owed to the Plaintiff by failing to properly adopt and enforce child sex abuse policies, including the mandatory enforcement of those policies for all employees and personnel, to prevent the sexual abuse of minors.

65.     Defendants Southern Territory and K/T Division breached their duties to Plaintiff by violating The Salvation Army USA policies, unilaterally removing Collier's name from the Territorial Registry, and hiring him to work with children.

66.     Defendant Salvation Army USA breached its duty to Plaintiff by failing to require Defendants Southern Territory and K/T Division to adopt and follow the National Policy Statements on Sexual Abuse of Children, as well as the HR policy requirements that mandate background checks for employees. Moreover, Defendant Salvation Army USA further breached its duty to Plaintiff by maintaining a Territorial Registry that allowed one territory to unilaterally remove a name placed on it by another territory.

67.     Defendants breached duties owed to Plaintiff by failing to adopt and/or enforce policies which would have precluded known or suspected sexual predators'

Presiding Judge: HON. TRACY E. DAVIS (630452)

COM : 000018 of 000028

18

Filed   25-CI-002314   03/26/2025   David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL
DOCUMENT
04/21/2025 02:59:27
PM
86968-1

unsupervised access to minors at Defendants'-sponsored events, on the property of Defendants, in Defendants' vehicles, and other various locations.

68.   Defendants knew or should have known that making Plaintiff, a minor at the time, available to a known or suspected sexual predator breached a duty of care owed to the minors.

69.   Defendants knew or should have known that engaging in the concealment of prior sexual abuse of a minor breached a duty of care owed to Plaintiff.

70.   Defendants breached their duty to prevent and/or stop Divisional Music Director Joel Collier from abusing Plaintiff.

71.   As a direct and proximate cause of these breaches of duty, Plaintiff suffered and continues to suffer physical and emotional distress, shock, embarrassment, loss of self-esteem, disgrace, humiliation, loss of faith, loss of community, loss of relationship, and loss of enjoyment of life; has sustained and will continue to sustain loss of earning capacity; and has incurred and will continue to incur expenses for medical and psychological treatment, therapy and counseling.

## COUNT II – NEGLIGENT HIRING, RETENTION, AND SUPERVISION

72.   Plaintiff restates, reiterates, and incorporates herein each and every allegation set forth above.

73.   In general, the possibility that a youth program leader employed by a faith-based organization who spends a significant amount of time connecting and working with youth might engage in an impermissible relationship with a child under age 18 was, or should have reasonably been, foreseeable by Defendants, given the

Presiding Judge: HON. TRACY E. DAVIS (630452)

COM : 000019 of 000028

19

Filed    25-CI-002314    03/26/2025    David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL
DOCUMENT

04/21/2025 02:59:27
PM

86968-1

prevalence of such types of impermissible relationships involving ministry members and minors across the United States and the fact that KRS 510.060(1) and KRS 532.045 exists specifically to criminalize sexual intercourse between a person in a position of authority and a minor.

74.    Defendants had a special relationship with Plaintiff such that they owed Plaintiff a duty of reasonable care with regard to risks arising out of the relationship, including the risk that employees of Defendants, including Divisional Music Director Joel Collier, could harm Plaintiff.

75.    Defendants likewise owed a legal duty to Plaintiff to exercise reasonable care in hiring and training their employees, agents, and program leaders and to adopt appropriate policies to avoid and preclude the development of improper sexual relationships under the age of 18. Defendants had a further duty to adopt appropriate policies for supervision, detection, investigation, and reporting of any improper relationships with youth.

76.    Defendants negligently hired, trained, and retained a known sexual offender to serve in capacities with authority over and unsupervised contact with minors, including Plaintiff.

77.    Defendants negligently failed to supervise those to whom Defendants entrusted the care of minors, including Divisional Music Director Joel Collier.

78.    Defendants permitted and/or failed to prevent the sexual abuse committed by Divisional Music Director Joel Collier against the Plaintiff.

Presiding Judge: HON. TRACY E. DAVIS (630452)

COM : 000020 of 000028

20

Filed    25-CI-002314    03/26/2025    David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
04/21/2025 02:59:27 PM
86968-1

79. Defendants were on actual or constructive notice of the acts being perpetrated by Divisional Music Director Joel Collier, yet refused to remove him from a position where he was in contact with minors, including Plaintiff. Such failures and breaches of duty constitute negligent retention.

80. Defendants' negligence in failing to adopt and/or enforce proper policies and in hiring, training, retaining, and supervising Divisional Music Director Joel Collier caused injury to Plaintiff, who has suffered and continues to suffer physical and emotional distress, shock, embarrassment, loss of self-esteem, disgrace, humiliation, loss of faith, loss of community, loss of relationship, and loss of enjoyment of life; has sustained and will continue to sustain loss of earnings and earning capacity; and has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling, all in excess of the jurisdictional limits of this Court.

### COUNT III – FRAUDULENT MISREPRESENTATION
(Defendants Southern Territory and K/T Division)

81. Plaintiff restates, reiterates, and incorporates herein each and every allegation set forth above.

82. Defendants Southern Territory and K/T Division represented to Plaintiff that Collier was safe to work with children.

83. The representation was false because Collier had sent sexually explicit texts to a minor camper in the Eastern Territory.

84. Defendants Southern Territory and K/T Division knew that their representation was false because they had actual knowledge that Collier's name was

21

Filed    25-CI-002314    03/26/2025    David L. Nicholson, Jefferson Circuit Clerk

Presiding Judge: HON. TRACY E. DAVIS (630452)

COM : 000021 of 000028

Filed          25-CI-002314          03/26/2025          David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL
DOCUMENT
04/21/2025 02:59:27
PM

86968-1

Presiding Judge: HON. TRACY E. DAVIS (630452)

COM : 000022 of 000028

on the Eastern Territory Registry for having sent sexually explicit texts to a minor camper.

85.    Defendants Southern Territory and K/T Division made the representation with the intention of inducing Plaintiff to rely on Collier as a trustworthy music teacher, counselor and spiritual authority figure.

86.    Tragically, Plaintiff acted in reliance on Defendants Southern Territory and K/T Division's misrepresentation by trusting Collier.

87.    As a direct and proximate cause of the foregoing wrongful conduct, Plaintiff has sustained and will continue to sustain severe physical injuries, severe emotional distress, economic losses and other damages for which she is entitled to compensatory and equitable damages and declaratory relief in an amount to be proven at trial. Defendants are liable to Plaintiff for all general, special, punitive, and equitable relief to which she is entitled by law.

## COUNT IV – FRAUDULENT OMISSION
(Defendants Southern Territory and K/T Division)

88.    Plaintiff restates, reiterates, and incorporates herein each and every allegation set forth above.

89.    Defendants Southern Territory and K/T Division had a duty to disclose to Plaintiff that Collier was on the Eastern Territory Registry for sending sexually explicit texts to a minor camper.

90.    Defendants Southern Territory and K/T Division covered up Collier's history as a sexual predator and violated mandatory reporting laws that are designed to protect the safety of minors when they failed to disclose that fact when they

22

Filed                25-CI-002314   03/26/2025                David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL
DOCUMENT
04/21/2025 02:59:27
PM
86968-1

removed Collier's name from the Eastern Territory Registry and hired him as their Divisional Music Director.

91.    Defendants Southern Territory and K/T Division's failure to disclose to Plaintiff that Collier was on the Eastern Territory Registry for sending sexually explicit texts to a minor female camper induced Plaintiff to trust Collier, allow him to be alone with her, and to open up to him for counsel and mentorship.

92.    As a direct and proximate cause of the foregoing wrongful conduct, Plaintiff has sustained and will continue to sustain severe physical injuries, severe emotional distress, economic losses and other damages for which she is entitled to compensatory and equitable damages and declaratory relief in an amount to be proven at trial. Defendants are liable to Plaintiff for all general, special, punitive, and equitable relief to which she is entitled by law.

## COUNT V – AIDING AND ABETTING HUMAN TRAFFICKING
(Defendants Southern Territory and K/T Division)

93.    Plaintiff restates, reiterates, and incorporates herein each and every allegation set forth above.

94.    KRS 529.010(3)(b) and (C) defines commercial sexual activity as:

(a) Any sex act, for which anything of value is given to, promised to, or received by any person; or

(b) Participation in the production of obscene material as set out in KRS Chapter 531.

23

Presiding Judge: HON. TRACY E. DAVIS (630452)

COM : 000023 of 000028

NOT ORIGINAL
DOCUMENT
PM

04/21/2025 02:59:27

86968-1

95. Collier committed human trafficking in violation of KRS 529.010 when he forced Riley, who was a minor at the time, to engage in a sex act with the promise of his continued favor and special privilege at music camp and when he forced Riley to send him sexually explicit photos.

96. Defendants Southern Territory and K/T Division gave substantial assistance and/or encouragement to Collier's trafficking by intentionally concealing Collier's history as a sexual offender who produced and provided obscene material to a minor female and then knowingly placing him in a position of authority and influence over the Plaintiff, also a minor female.

97. As a direct and proximate cause of the foregoing wrongful conduct, Plaintiff has sustained and will continue to sustain severe physical injuries, severe emotional distress, economic losses and other damages for which she is entitled to compensatory and equitable damages and declaratory relief in an amount to be proven at trial. Defendants are liable to Plaintiff for all general, special, punitive, and equitable relief to which she is entitled by law.

### COUNT VII – NEGLIGENT/INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
(Defendants Southern Territory and K/T Division)

98. Plaintiff restates, reiterates, and incorporates herein each and every allegation set forth above.

99. The Plaintiff has endured significant stress and severe emotional distress due to the outrageous and intolerable conduct of the Defendants' Southern Territory

24

Presiding Judge: HON. TRACY E. DAVIS (630452)

COM : 000024 of 000028

Filed          25-CI-002314          03/26/2025          David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL
DOCUMENT
04/21/2025 02:59:27
PM
86968-1

and K/T Division, which offends generally accepted standards of decency and morality.

100.    The actions of Defendants' Southern Territory and K/T Division were intentional, reckless, and/or negligent, and Defendants knew or should have known that injury and severe emotional distress would likely result from their actions.

101.    Defendants Southern Territory and K/T Division knew or should have known that engaging in concealment of Collier's prior sexual abuse of minors and placing Plaintiff under Collier's supervision and care breached a duty of care to Plaintiff.

102.    Defendants' Southern Territory and K/T Division's acts and omissions, which led to the hiring of Divisional Music Director Joel Collier—despite prior warnings and in violation of Salvation Army policy—thereby bringing a sexual predator into the life of an unsuspecting teenager, were so extreme and outrageous that they violated human dignity and offended generally accepted standards of decency and morality.

103.    As a direct and proximate cause of the foregoing wrongful conduct, Plaintiff has suffered and continues to suffer extreme physical and emotional distress, shock, embarrassment, loss of self-esteem, disgrace, humiliation, loss of faith, loss of community, loss of relationship, and loss of enjoyment of life; has sustained and will continue to sustain loss of earnings and earning capacity; and has incurred and will continue to incur expenses for medical and psychological treatment, therapy and counseling.

Presiding Judge: HON. TRACY E. DAVIS (630452)

COM : 000025 of 000028

25

Filed          25-CI-002314          03/26/2025          David L. Nicholson, Jefferson Circuit Clerk

Filed          25-CI-002314     03/26/2025          David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL
DOCUMENT
04/21/2025 02:59:27
PM
86968-1

## COUNT VIII – BREACH OF FIDUCIARY DUTY

104.   Plaintiff restates, reiterates, and incorporates herein each and every allegation set forth above.

105.   Collier assumed a fiduciary duty by soliciting Riley's trust and confidence in him as a mentor and counselor.

106.   A fiduciary relationship was created between the Defendants and the minor Plaintiff when their Divisional Music Director provided her counseling and mentorship.

107.   Defendants breached their fiduciary duty to Plaintiff when Collier engaged in sexual contact with her by forcible compulsion under KRS 510.110(1) and when he had sexual contact with her without her consent under KRS 110.130.

108.   Defendants further breached their fiduciary duty to Plaintiff by removing a known sex offender from their internal registry, hiring him, and placing him in a position of responsibility over minors, holding him out to be qualified to engage in counseling and mentorship.

109.   As a direct and proximate cause of the foregoing wrongful conduct, Plaintiff has sustained and will continue to sustain severe physical injuries, severe emotional distress, economic losses and other damages for which she is entitled to compensatory and equitable damages and declaratory relief in an amount to be proven at trial. Defendants are liable to Plaintiff for all general, special, punitive, and equitable relief to which she is entitled by law.

Presiding Judge: HON. TRACY E. DAVIS (630452)

COM : 000026 of 000028

26

Filed          25-CI-002314     03/26/2025          David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL
DOCUMENT
04/21/2025 02:59:27
PM
86968-1

WHEREFORE, the Plaintiff, Riley Neville, respectfully demands the following:

1.     Judgment against Defendants in favor of Plaintiff, Riley Neville, in an amount in excess of the jurisdictional limit of this Court, said amount to be that which is determined as being fair and reasonable by all the evidence, for the following elements of damages:

    a.     Trial by Jury;

    b.     Past mental and physical pain, suffering and inconvenience;

    c.     Future mental and physical pain, suffering and inconvenience;

    d.     Past and future medical expenses;

    e.     Destruction of Plaintiff's power to labor and earn money;

    f.     Miscellaneous expenses incurred by Plaintiff necessitated by the negligent/intentional acts of Defendants;

    g.     Punitive damages;

    h.     Pre-judgment and post-judgment interest;

    i.     Plaintiff's costs expended herein, including reasonable attorneys' fees;

    j.     And any and all other relief to which Plaintiff may be entitled by law.

Presiding Judge: HON. TRACY E. DAVIS (630452)

COM : 000027 of 000028

27

Filed          25-CI-002314     03/26/2025          David L. Nicholson, Jefferson Circuit Clerk

Filed          25-CI-002314    03/26/2025          David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL

DOCUMENT

04/21/2025 02:59:27

PM

Respectfully submitted,

/s/ Mark P. Bryant          86968-1

Mark P. Bryant
Emily Ward Roark

BRYANT LAW CENTER
601 Washington Street
Paducah, Kentucky 42001
Phone: (270) 442-1422
Fax: (270) 443-8788
mark.bryant@bryantpsc.com
emily.roark@bryantpsc.com

-and-

David G. Bryant
DAVID BRYANT LAW, PLLC
600 W. Main Street, Suite 100
Louisville, KY 40202
Phone: (502) 540-1221
Fax:  (502) 540-1200
david@davidbryantlaw.com

-and-

Basyle Tchividjian
BozLaw, P.A.
112 West New York Avenue,
Suite 207
DeLand, FL. 32720
Telephone:  (386) 682-5540
boz@bozlawpa.com
*Pro Hac Vice Pending*

Counsel for Plaintiff

28

Presiding Judge: HON. TRACY E. DAVIS (630452)

COM : 000028 of 000028

| | | |
|---|---|---|
| AOC-E-105   Sum Code: CI<br>Rev. 9-14<br><br>Commonwealth of Kentucky<br>Court of Justice    *Courts.ky.gov*<br><br>CR 4.02; Cr Official Form 1 | <br><br>**CIVIL SUMMONS** | Case #: **25-CI-002314**<br>Court: **CIRCUIT**<br>County: **JEFFERSON Circuit** |

NOT ORIGINAL
DOCUMENT
04/21/2025 02:50:55
PM
86968-1

*Plantiff,* **NEVILLE, RILEY VS. THE SALVATION ARMY USA SOUTHERN TERRITORY**, *Defendant*

TO:  **CT CORPORATION SYSTEM**

  **306 W. MAIN ST.**

  **SUITE 512**

  **FRANKFORT, KY 40601**

Memo: Related party is THE SALVATION ARMY USA SOUTHERN TERRITORY

The Commonwealth of Kentucky to Defendant:
**THE SALVATION ARMY USA SOUTHERN TERRITORY**

    You are hereby notified that a **legal action has been filed against you** in this Court demanding relief as shown on the document delivered to you with this Summons. **Unless a written defense is made by you or by an attorney on your behalf within twenty (20) days** following the day this paper is delivered to you, judgment by default may be taken against you for the relief demanded in the attached complaint.

The name(s) and address(es) of the party or parties demanding relief against you or his/her (their) attorney(s) are shown on the document delivered to you with this Summons.

Jefferson Circuit Clerk
Date: **3/26/2025**

**Presiding Judge: HON. TRACY E. DAVIS (630452)**

---

### Proof of Service

This Summons was:

☐ Served by delivering a true copy and the Complaint (or other initiating document)

  To: _____

☐ Not Served because: _____

Date: _____, 20 _____

_____
Served By

_____
Title

**CI : 000001 of 000001**

Summons ID: @00001098505
CIRCUIT: 25-CI-002314 Certified Mail
NEVILLE, RILEY VS. THE SALVATION ARMY USA SOUTHERN TERRITORY



Page 1 of 1

**eFiled**



| | | |
|---|---|---|
| AOC-E-105       Sum Code: CI<br>Rev. 9-14<br><br>Commonwealth of Kentucky<br>Court of Justice     *Courts.ky.gov*<br><br>CR 4.02; Cr Official Form 1 | **CIVIL SUMMONS** | Case #: **25-CI-002314**<br>Court: **CIRCUIT**<br>County: **JEFFERSON Circuit** |

*Plantiff,* **NEVILLE, RILEY VS. THE SALVATION ARMY USA SOUTHERN TERRITORY**, *Defendant*

TO: **SALVATION ARMY KENTUCKY & TENNESSEE DIV**
**2110 WICKHAM PLACE**
**LOUISVILLE, KY 40245**

The Commonwealth of Kentucky to Defendant:

You are hereby notified that a **legal action has been filed against you** in this Court demanding relief as shown on the document delivered to you with this Summons. **Unless a written defense is made by you or by an attorney on your behalf within twenty (20) days** following the day this paper is delivered to you, judgment by default may be taken against you for the relief demanded in the attached complaint.

The name(s) and address(es) of the party or parties demanding relief against you or his/her (their) attorney(s) are shown on the document delivered to you with this Summons.

Jefferson Circuit Clerk
Date: **3/26/2025**

**Presiding Judge: HON. TRACY E. DAVIS (630452)**

## Proof of Service

This Summons was:

☐ Served by delivering a true copy and the Complaint (or other initiating document)

To: _____

☐ Not Served because: _____

Date: _____ , 20 _____

_____
Served By

_____
Title

CI : 000001 of 000001

Summons ID: @00001098503
CIRCUIT: 25-CI-002314 Certified Mail
NEVILLE, RILEY VS. THE SALVATION ARMY USA SOUTHERN TERRITORY



Page 1 of 1

eFiled

AOC-E-105        Sum Code: CI
Rev. 9-14

DOCUMENT

Commonwealth of Kentucky
Court of Justice        *Courts.ky.gov*

CR 4.02; Cr Official Form 1



**CIVIL SUMMONS**

Case #: **25-CI-002314**

Court: **CIRCUIT**

County: **JEFFERSON Circuit**

NOT ORIGINAL
04/21/2025 02:50:27
PM
86968-1

---

*Plantiff,* **NEVILLE, RILEY VS. THE SALVATION ARMY USA SOUTHERN TERRITORY**, *Defendant*


TO:  **THE SALVATION ARMY NATIONAL CORPORATION**

**4701 COX ST.**

**SUITE 285**

**GLEN ALLEN, VA 23060**


The Commonwealth of Kentucky to Defendant:
**THE SALVATION ARMY NATIONAL CORPORATION**

You are hereby notified that a **legal action has been filed against you** in this Court demanding relief as shown on the document delivered to you with this Summons. **Unless a written defense is made by you or by an attorney on your behalf within twenty (20) days** following the day this paper is delivered to you, judgment by default may be taken against you for the relief demanded in the attached complaint.

The name(s) and address(es) of the party or parties demanding relief against you or his/her (their) attorney(s) are shown on the document delivered to you with this Summons.


Davis L. Nicholson

Jefferson Circuit Clerk
Date: **3/26/2025**

**Presiding Judge: HON. TRACY E. DAVIS (630452)**

---

## Proof of Service

This Summons was:

☐ Served by delivering a true copy and the Complaint (or other initiating document)

To: _____

☐ Not Served because: _____

Date: _____, 20_____

_____
Served By

_____
Title

**CI : 000001 of 000001**

---

Summons ID: @00001098504
CIRCUIT: 25-CI-002314 Long Arm Statute – Secretary of State
NEVILLE, RILEY VS. THE SALVATION ARMY USA SOUTHERN TERRITORY



**eFiled**

**Filed** 25-CI-002314    04/02/2025    **David L. Nicholson, Jefferson Circuit Clerk**

**NOT ORIGINAL
DOCUMENT
04/21/2025 02:44:56
PM

86968-1**

### UNITED STATES POSTAL SERVICE™

Date Produced: 04/02/2025

The following is the delivery information for Certified Mail™/RRE/RD item number 9236 0901 9403 8307 0932 46. Our records indicate that this item was delivered on 04/01/2025 at 08:27 a.m. in FRANKFORT, KY 40601. The scanned image of the recipient information is provided below.

Signature of Recipient :



Address of Recipient :

Thank you for selecting the Postal Service for your mailing needs.  If you require additional assistance, please contact your local post office or Postal Service representative.

Sincerely,
United States Postal Service

The customer reference number shown below is not validated or endorsed by the United States Postal Service. It is solely for customer use.

This USPS proof of delivery is linked to the customers mail piece information on file as shown below:

CT CORPORATION SYSTEM
306 W. MAIN ST.
SUITE 512
FRANKFORT KY 40601

Customer Reference Number:    C5765967.34959152

COR : 000001 of 000002

**Filed**    25-CI-002314    04/02/2025    **David L. Nicholson, Jefferson Circuit Clerk**

Filed          25-CI-002314    04/02/2025          David L. Nicholson, Jefferson Circuit Clerk

USPS MAIL PIECE TRACKING NUMBER:  420406019236090194038307093246

MAILING DATE:          03/26/2025
DELIVERED DATE:    04/01/2025
Custom 1: DriverId-10212662
Custom 2: PartyId-66925649
Custom 3: SummonsNum-@00001098505
Custom 4: CentralMailId-223775
Custom 5: Source County-JEFFERSON Circuit

MAIL PIECE DELIVERY INFORMATION:

CT CORPORATION SYSTEM
306 W. MAIN ST.
SUITE 512
FRANKFORT KY 40601

MAIL PIECE TRACKING EVENTS:

| Date/Time | Event | Location |
|---|---|---|
| 03/26/2025 14:59 | PRE-SHIPMENT INFO SENT  USPS AWAITS ITEM | FRANKFORT,KY 40601 |
| 03/26/2025 16:27 | SHIPMENT RECEIVED ACCEPTANCE PENDING | FRANKFORT,KY 40601 |
| 03/27/2025 07:47 | ORIGIN ACCEPTANCE | FRANKFORT,KY 40601 |
| 03/27/2025 09:02 | PROCESSED THROUGH USPS FACILITY | LEXINGTON KY DISTRIBUTION CENTE 40511 |
| 03/28/2025 10:34 | PROCESSED THROUGH USPS FACILITY | LEXINGTON KY DISTRIBUTION CENTE 40511 |
| 03/29/2025 17:17 | PROCESSED THROUGH USPS FACILITY | LEXINGTON KY DISTRIBUTION CENTE 40511 |
| 03/30/2025 16:30 | PROCESSED THROUGH USPS FACILITY | LEXINGTON KY DISTRIBUTION CENTE 40511 |
| 04/01/2025 04:38 | ARRIVAL AT UNIT | FRANKFORT,KY 40601 |
| 04/01/2025 06:10 | OUT FOR DELIVERY | FRANKFORT,KY 40601 |
| 04/01/2025 08:27 | DELIVERED INDIVIDUAL PICKED UP AT USPS | FRANKFORT,KY 40601 |

NOT ORIGINAL

04/21/2025 02:44:56

86968-1

COR : 000002 of 000002

Filed          25-CI-002314   04/01/2025          David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL
DOCUMENT
04/21/2025
02:43:26 PM
86968-1

**Commonwealth of Kentucky**
**Office of the Secretary of State**

Michael G. Adams
Secretary of State

Summons Division
PO BOX 718
FRANKFORT, KY 40602-0718
Phone: (502) 564-3490
Fax: (502) 564-5687

Circuit Court Clerk
Jefferson County
700 West Jefferson St.
Louisville, KY 40202

FROM:          SUMMONS DIVISION
               SECRETARY OF STATE

RE:            CASE NO: 25-CI-002314

DEFENDANT:     THE SALVATION ARMY NATIONAL
               CORPORATION

DATE:          April 1, 2025

USPS Certified Mail ID:   9202992267700103302543

The Office of the Secretary of State was served with a summons and accompanying documents for the captioned defendant on

March 26, 2025

This office served the defendant by sending a copy of the summons and accompanying documents via certified mail, return receipt requested, on

March 26, 2025

We are enclosing the return receipt confirming receipt of summons.

Kentucky Secretary of State's          Summons Division                                              4/1/2025
Office          25-CI-002314   04/01/2025          David L. Nicholson, Jefferson Circuit Clerk

Filed

COR : 000001 of 000002

**DOCUMENT**

Filed     Case 3:25-cv-00227-RGJ    25-CI-002314    04/01/2025    Document 1-1    Filed 04/21/25    David L. Nicholson, Jefferson Circuit   Page 65 of 65   PageID #: 73   04/21/2025

02:43:26 PM

**UNITED STATES POSTAL SERVICE**

86968-1

April 1, 2025

Dear Secretary Of State Commonwelth of Kentucky:

The following is in response to your request for proof of delivery on your item with the tracking number: **9202 9922 6770 0103 3025 43**.

## Item Details

| | |
|---|---|
| **Status:** | Delivered to Agent, Picked up at USPS |
| **Status Date / Time:** | April 1, 2025, 12:01 pm |
| **Location:** | GLEN ALLEN, VA 23060 |
| **Postal Product:** | Priority Mail® |
| **Extra Services:** | Certified Mail™ |
| | Return Receipt |
| | Return Receipt Electronic |
| | Up to $100 insurance included |

## Recipient Signature

| | |
|---|---|
| Signature of Recipient: (Authorized Agent) |  |
| Address of Recipient: | |

Note: Scanned image may reflect a different destination address due to Intended Recipient's delivery instructions on file.

Thank you for selecting the United States Postal Service® for your mailing needs. If you require additional assistance, please contact your local Post Office™ or a Postal representative at 1-800-222-1811.

Sincerely,
United States Postal Service®
475 L'Enfant Plaza SW
Washington, D.C. 20260-0004

COR : 000002 of 000002