UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

RILEY NEVILLE                                                    Plaintiff

v.                                              Civil Action No. 3:25-cv-227-RGJ

THE SALVATION ARMY NATIONAL                                     Defendants
CORPORATION, ET AL.

\* \* \* \* \*

**MEMORANDUM OPINION & ORDER**

Plaintiff Riley Neville ("Neville") moves to remand. [DE 25]. Defendants Salvation Army National Corporation ("Salvation Army National"), Salvation Army USA Southern Territory ("Southern Territory"), and Salvation Army Kentucky and Tennessee Division ("K/T Division") (collectively, "Defendants") responded [DE 28; DE 29], and Neville replied [DE 32]. Southern Territory and K/T Division also filed a motion for leave to clarify their response.[1] [DE 33]. Briefing is complete and the matter is ripe. For the reasons set forth below, Southern Territory and K/T Division's motion for leave to clarify response is **GRANTED** and Neville's motion to remand is **DENIED**.

## I.        BACKGROUND

On March 26, 2025, Neville filed a complaint in Jefferson Circuit Court against Defendants alleging that Southern Territory employee Joel Collier groomed and sexually abused her when she was a minor. [DE 1-1]. Neville asserts claims for: (1) negligence; (2) negligent hiring, supervision and retention; (3) fraudulent misrepresentation; (4) fraudulent omission; (5) aiding and abetting

---

[1] The motion for leave to clarify response asks the Court to allow a minor correction of a typo in Defendants' response to the motion to remand. The correction does not affect the outcome of the motion to remand and therefore will be granted.

1

human trafficking; (6) negligent/intentional infliction of emotional distress; and (7) breach of fiduciary duty. [*Id.* at 27–36]. Southern Territory timely removed the case to federal court, asserting that there is diversity of citizenship between Neville (a citizen of Tennessee) Salvation Army National (a citizen of Virginia and New Jersey), and Southern Territory (a citizen of Georgia). [DE 1]. Neville subsequently filed a motion to remand, arguing that Defendant K/T Division is a citizen of Kentucky and therefore the case cannot be removed under 28 U.S.C § 1441(b)'s prohibition on home-state removal. [DE 25-1 at 218].

In the United States, the Salvation Army is comprised of four separate corporate entities: the Southern Territory, Central Territory, Western Territory, and Eastern Territory. [DE 1-1 at 13; DE 29-4, Southern Territory Employee Manual, at 326]. The territories are further divided into divisions, each of which is headed by a divisional commander. [DE 29-4 at 326]. The Southern Territory covers the southeastern United States and consists of divisions encompassing fifteen states, including the K/T Division. [*Id.* at 326–27]. Neville maintains that the K/T Division constitutes an independent entity with its own citizenship—distinct from Southern Territory—and that K/T Division is a citizen of Kentucky, where its leaders are based.

## II.    STANDARD

Removal to federal court is proper for "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). Diversity jurisdiction gives "[t]he district courts . . . original jurisdiction [over] all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different states." 28 U.S.C. § 1332(a), (a)(1). A defendant removing a case has the burden of proving jurisdiction. *See Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921).

2

Under 28 U.S.C. § 1441(b)(2), removal based on diversity is improper if "any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." This "forum defendant rule" prohibits removal if the defendant is a citizen of the state in which the suit was filed. *United Steel Supply, LLC v. Buller*, No. 3:13-CV-00362-H, 2013 WL 3790913, at *1 (W.D. Ky. July 19, 2013). "This rule reflects the belief that even if diversity exists, a forum defendant—a defendant who is a citizen of the state in which it is sued—has no reason to fear state court prejudice." *NFC Acquisition, LLC v. Comerica Bank*, 640 F. Supp. 2d 964, 968 (N.D. Ohio 2009).

## III.    DISCUSSION

Neville does not dispute that complete diversity exists or that the amount-in-controversy is satisfied. Instead, she argues that the forum defendant rule precludes removal because Defendant K/T Division is a citizen of Kentucky. [DE 25-1 at 218]. In making this argument, Neville asserts that K/T Division operates independently of Defendant Southern Territory, and therefore it should be treated as a separate entity for jurisdictional purposes. [*Id.* at 219]. She urges the Court to treat K/T Division as an unincorporated entity, where citizenship is determined by the citizenship of the entity's "members." [*Id.* at 229–30]. Finally, she argues that K/T Division's three "key leaders"—Divisional Commanders Majors Algerome and Teresa Newsom and Youth Secretary Jervonne Hinton—should be considered K/T Division's "members" because they exercise high-level authority. [*Id.* at 232]. Because all three individuals are domiciled in Kentucky, Neville maintains that K/T Division is a citizen of Kentucky. [*Id.* at 231–32]. Defendants respond that K/T Division is merely a division of Southern Territory and lacks the formal separateness that would deem it an independent entity for jurisdictional purposes. [DE 28 at 278–79; DE 29 at 289–90]. They also maintain that even if the Court treats K/T Division as an independent entity, there is no basis for

Neville's argument that K/T Division is an unincorporated association or that the three individuals she selected are the entity's "members." [DE 28 at 280; DE 29 at 295].

Because Neville's argument rests entirely on the assertion that K/T Division constitutes an independent entity with its own unique citizenship, that is where the Court begins and ends its analysis. The Sixth Circuit considered this question in *Schwartz v. Electronic Data Systems, Inc.*, a case dealing with a parallel issue: the citizenship of a corporate parent and its incorporated subsidiary. 913 F.2d 279 (6th Cir. 1990). There, the Court adopted the principle that when "formal separation is maintained between a corporate parent and its corporate subsidiary, federal court jurisdiction over the subsidiary is determined by [the subsidiary's] citizenship, not the citizenship of the parent." *Id.* at 283.  The Court explained that its holding was consistent with cases where the corporate parent's citizenship—as opposed to the subsidiary's—was found to control, because those cases involved subsidiaries that "were not actually separate corporate entities." *Id.* at 284. The Court also noted that its holding did not conflict with *Wisconsin Knife Works v. National Metal Crafters*, where the Seventh Circuit held that the citizenship of a *division* of a corporation is determined by the citizenship of the corporation that owns the division. *Id.* at 284 (citing *Wisconsin Knife Works v. National Metal Crafters*, 781 F.2d 1280, 1282 (7th Cir. 1986)). *Schwartz* noted that the Seventh Circuit's conclusion was consistent with its own because "[a] division of a corporation does not possess the formal separateness upon which the general rule is based, and thus is not an independent entity for jurisdictional purposes." *Id.* Based on the principle that "formal separation" is what gives a subsidiary its independent identity, the court concluded that a wholly-owned subsidiary of a parent corporation that was incorporated separately from its parent was its own independent entity for purposes of jurisdiction. *Id. Schwartz* therefore stands for the

4

proposition an entity's independent identity is determined by formal separation from its parent corporation via independent legal incorporation.

Neville contends that the Court should not rely on *Schwartz* because the court's statement that a division of a corporation does not possess formal separateness is mere dicta. [DE 25-1 at 219]. She maintains that *Schwartz* cited to *Wisconsin Knife Works* "only to show that its own ruling was not inconsistent," not to explicitly adopt the rule from that case. [*Id.*]. Thus, she argues that "this is a matter of first impression" and asks the Court instead to follow *Kierl-Allen v. Salvation Army Arkansas Oklahoma Division*, an Oklahoma district court case. The Court does not read *Schwartz* so narrowly, however. Rather, *Schwartz* establishes a general principle that "formal separation" is the touchstone of whether an entity is considered independent from its parent organization. *See Schwartz*, 913 F.2d at 283. The natural corollary of this principle is that an unincorporated division of a corporation "does not possess the formal separateness upon which the general rule is based, and thus is not an independent entity for jurisdictional purposes." *Id.* at 284.

Moreover, other district courts from this Circuit have applied *Schwartz* and *Wisconsin Knife Works* to conclude that a division of an organization possesses the citizenship of its parent organization. For example, in *Planning and Development Department v. Daughters of Union Veterans of the Civil War*, the court analyzed whether the citizenship of local divisions of a national organization should be determined by the citizenship of the national organization. No. 05-72328, 2005 WL 3163393, at *3 (E.D. Mich. Nov. 28, 2005). The court, citing *Schwartz* and *Wisconsin Knife Works*, concluded that the local divisions were citizens of the state of the parent organization because they operated "under the control of and authority of the National Organizations" and were not independently incorporated. *Id.* at *3–4; *see also Franklin Bank v. Tindall*, No. 07-13748, 2008

5

WL 408413, at *2 (E.D. Mich. Feb. 12, 2008) (applying the rule from *Wisconsin Knife Works* to conclude that a division of a bank possessed the citizenship of its parent bank*); Encore Med., L.P. v. Kennedy*, 861 F. Supp. 2d 886, 897 n.5 (E.D. Tenn. 2012) (citing *Schwartz*). Other courts outside this circuit have likewise applied the *Wisconsin Knife Works* rule to hold that unincorporated divisions of corporations lack citizenship separate from their parent corporations. *See, e.g.*, *Breitman v. May Co. California*, 37 F.3d 562, 564 (9th Cir. 1994) (citing *Schwartz* and finding that an unincorporated division should not be treated the same as an incorporated subsidiary); *United Computer Cap. Corp. v. Secure Prods., L.P.*, 218 F. Supp. 2d 273, 279 (N.D.N.Y. 2002); *Centeno v. CMC Commonwealth Metals Corp.*, No. CV 07-2575 (PGS), 2007 WL 9789613, at *2 (D.N.J. Nov. 13, 2007); *accord* 13B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3625 (3d. ed. 2025) ("[I]n determining the citizenship of an unincorporated division of a corporation, the court will look to the principal place of business of the owning corporation."). Thus, *Schwartz*'s assertion that a "division of a corporation does not possess the formal separateness upon which the general rule is based, and thus is not an independent entity for jurisdictional purposes" is a widely embraced principle that this Court likewise adopts.

Neville nonetheless urges the Court to ignore *Schwartz* and instead "allow for the K/T Division to be treated as its own entity for jurisdiction purposes, as allowed in *Kierl-Allen v. Salvation Army Arkansas/Oklahoma Division*." DE 25-1 at 219. *Kierl-Allen*, however, did not address citizenship or jurisdiction, and the court made no findings as to whether the Arkansas/Oklahoma Division of the Salvation Army was an independent entity. No. CIV-18-1140-D, 2021 WL 4495909, at *1 (W.D. Okla. Sept. 30, 2021). In fact, jurisdiction in that case was premised on federal question jurisdiction, so the court neither discussed the parties' citizenship, nor did it explicitly allow a division to be "treated as its own entity for jurisdiction purposes," as

Neville claims. *Id.* at *1. The court therefore assumed the issue of jurisdiction without deciding or discussing it, so its decision has no bearing on this Court's ruling. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 91 (1998) ("[D]rive-by jurisdictional rulings of this sort . . . have no precedential effect.").

Neville also explains that the "*Kierl-Allen* court, while on a motion for summary judgement [sic] for an unrelated issue, allowed the plaintiff to sue The Salvation Army Arkansas/Oklahoma Division." [DE 25-1 at 219]. Yet, like the jurisdictional issue, the division's capacity to be sued was not at issue in that case, and thus not discussed by the court. Moreover, the court's assumption that the Salvation Army division had the capacity to be sued is not equivalent to an assumption that the division is an independent entity for jurisdictional purposes. In other words, whether a division is considered an independent entity for purposes of jurisdiction constitutes a separate legal question from whether that entity has the capacity to be sued. *See Wisconsin Knife Works*, 781 F.2d at 1282 ("Although a division may, if state law permits, sue and be sued in its own name, the state of which it is a citizen for purposes of determining diversity is the state of which the corporation that owns the division is a citizen.") (citation omitted). An entity's capacity to be sued is governed by Fed. R. Civ. P. 17, and an unincorporated entity's capacity to be sued is generally determined by the law of the state where the court is located. Fed. R. Civ. P. 17(b)(3). Simply put, the fact that an entity is capable of being sued under state law does not necessarily suggest that the entity's citizenship must be considered separately from its parent organization.

The record makes clear that K/T Division is simply a division of Southern Territory, not an independent entity. First, there is no evidence in the record that K/T Division is incorporated in Kentucky or elsewhere, and Neville does not suggest that it is incorporated. *See Planning & Development Dept.*, 2005 WL 3163393 at *4 (pointing to defendants' lack of independent

incorporation in finding that defendants operated as subordinate divisions of the national organization). Under *Schwartz*, this lack of formal incorporation alone should subject K/T Division to the citizenship of Southern Territory. *See Schwartz*, 913 F.2d at 283; *see also L'Garde, Inc. v. Raytheon Space & Airborne Sys.*, 805 F. Supp. 2d 932, 939 (C.D. Cal. 2011) ("[U]nlike a legally incorporated subsidiary, an unincorporated division of a corporation does not possess the formal separateness required and is therefore not an independent entity for jurisdictional purposes.") (citing *Breitman v. May Co. Calif.*, 37 F.3d 562, 564 (9th Cir. 1994)); *Spitzer v. Lincoln Nat. Life Ins. Co.*, No. CIV.A. 12-5910, 2013 WL 3878585, at *2 (E.D. Pa. July 29, 2013) (explaining that divisions of a corporation that are not themselves incorporated are "business units, rather than separate corporate units").

Second, Southern Territory's corporate documents establish that K/T Division operates under the control and authority of Southern Territory. The employee manual, for instance, states that the "Southern Territory covers the Southeastern United States, with Territorial Headquarters in Atlanta, Georgia" and explains that "[t]he Southern Territory consists of divisions encompassing fifteen states and the District of Columbia." [DE 29-4 at 326]. The manual then lists the K/T Division among the divisions that make up the Southern Territory. [*Id.* at 327]. The manual "applies to all employees of The Salvation Army United States Southern Territory," confirming that individual divisions operate under the authority of the Southern Territory. [*Id.* at 329]. According to the Salvation Army Delegation of Authority, the Southern Territory is a Georgia corporation "organized for the purpose of holding title to properties, entering into contracts and otherwise acting as the territory's legal agency." [DE 29-1 at 303]. The Delegation of Authority further states that the Southern Territory has "delegated . . . authority to process certain documents, requisitions, and payments," yet maintains control over major transactions and legal affairs. [*Id.* at

303–04]. In other words, while delegating some authority to divisions under its control, Southern Territory maintains substantial control over divisional operations.

Neville's complaint even appears to adopt this understanding of the relationship between K/T Division and Southern Territory by characterizing K/T Division as "an unincorporated entity" and "the local representative body of Defendant Southern Territory." [DE 1-1 at 12]. The complaint also states that "Defendant K/T Division is under the jurisdiction and authority of Defendant Southern Territory and abides by their rules and policies." [*Id.*]; *see Roe RL 8 v. Church of Jesus Christ of Latter-day Saints*, No. 5:24-CV-02149, 2025 WL 467489, at *2 (C.D. Cal. Feb. 11, 2025) (finding that a local division of the LDS church was "not a separate entity for jurisdictional purposes" when plaintiff's complaint "repeatedly emphasize[d] that [it] was a 'division' and 'subsidiary' of the LDS church, not a distinct entity").

The materials Neville offers as evidence of K/T Division's independent identity fail to establish the "formal separateness" *Schwartz* speaks of. For instance, Neville points to permitting applications that ostensibly identify K/T Division as the responsible entity,[2] K/T Division's webpage within the broader Salvation Army website, the fact that the divisions have their own "Affirmative Action Plans and Human Resources Representatives," the K/T Division social media pages, the fact that K/T Division maintains operational control over and solicits donations for Camp Paradise Valley & Conference Center, and affidavits from divisional employees who believed they were employed by their division as opposed to Southern Territory or Salvation Army National. [DE 25-1 at 221–28]. The distinction outlined in *Schwartz* and other cases, however, is between an *incorporated* subsidiary and an *unincorporated* division. *See Schwartz*, 913 F.2d at

---

[2] While Neville contends that K/T Division is identified as the responsible entity on the permitting applications, the actual application identifies "The Salvation Army – Camp Paradise Valley" as the applicant. [DE 25-1 at 237].

283–84 (noting the "general rule" that a subsidiary "incorporated separately from its parent" is treated as an independent entity, but a division of a corporation does not possess the "formal separateness" on which that general rule is based). None of the evidence Neville points to suggests that K/T Division operates as an *incorporated* subsidiary. *See Planning & Development Dept.*, 2005 WL 3163393 at *4 (explaining that, under *Schwartz*, defendants were citizens of the state of their national parent organization when there was "no evidence that any of the Defendants [were] incorporated in Michigan or elsewhere" and there was no authority indicating that "the fact that Defendants maintain local addresses and acted in their own name" should alter the court's analysis). The fact that K/T Division maintains its own social media pages and possessed control over certain operations does not indicate that it was *formally* separate from Southern Territory.

In her reply, Neville contends that *Schwartz* does not stand for the proposition that "a corporate division can *never* be considered a separate legal entity for purposes of diversity jurisdiction." [DE 32 at 442 (emphasis added)]. Rather, *Schwartz* stated that "nothing in the record would support a finding that [the defendant] is not, formally a separate corporation," meaning the "court's conclusion depended on the absence of contrary evidence in the record." [*Id.* (quoting *Schwartz*, 913 F.2d at 284)]. Neville thus argues that where evidence *does* exist that an entity is formally a separate corporation, a "different outcome might be warranted." [*Id.*]. The problem, once again, is that the evidence put forward by Neville does not reveal that K/T Division is "formally a separate corporation." For instance, the K/T Division website that Neville points to is a sub-page of the broader Salvation Army domain. [DE 25-1 at 222; DE 25-4 at 241]. Moreover, the fact that an entity has its own social media pages, is identified on a permit application, and acts autonomously with respect to certain operations also does not establish that it is formally separate. *See United Computer Cap. Corp.*, 218 F. Supp. at 279 (finding that an unincorporated division did

not become an independent entity by entering into a marketing agreement in its own name); *Planning & Development Dept.*, 2005 WL 3163393 at *4 (explaining that the fact that defendants maintained local addresses and acted in their own name had no bearing on defendants' citizenship when they were not incorporated).

Finally, K/T Division does not fit within the definition of "unincorporated association," so Neville's request to characterize it as such fails. An "unincorporated association" is typically defined as "a body of persons united without a charter, but upon the methods and forms used by incorporated bodies for the prosecution of some common enterprise." *Rush v. City of Mansfield*, 771 F. Supp. 2d 827, 844 (N.D. Ohio 2011) (citations omitted) (quoting *Hazel v. Beta Omicron Chptr. of Sigma Nu Fraternity House Corp.*, Case No. 4:08cv46, 2009 WL 677325, at *2, (E.D. Tenn. Mar. 12, 2009). As other courts have recognized, the hallmark of an unincorporated association is that it operates without a charter, and because divisions of corporations typically operate under the authority of the corporation's charter, they are not unincorporated associations." *See E.E.O.C. v. St. Francis Xavier Parochial Sch.*, 77 F. Supp. 2d 71, 77 (D.D.C. 1999), *aff'd sub nom.* 254 F.3d 315 (D.C. Cir. 2000) (concluding that that "the federal law definition of an unincorporated association does not encompass an unincorporated division of a corporation" because "the division is governed by the terms of the corporate charter"). Here, the evidence suggests that K/T Division operates under the charter of its parent organization [DE 29-3]. Southern Territory's bylaws and employee manual [DE 29-6; DE 29-4] make clear that Southern Territory encompasses K/T Division, and therefore that K/T Division operates under its charter.

Accordingly, because K/T Division is an unincorporated division of Southern Territory, it is not an independent entity for jurisdictional purposes and instead shares the citizenship of

Southern Territory. Neville does not dispute that Southern Territory is a citizen of Georgia. [*See* DE 1-1 at 12]. K/T Division is therefore a citizen of Georgia, and the prohibition on home state removal does not apply. Because complete diversity exists and the amount-in-controversy is satisfied,[3] the Court may properly exercise jurisdiction. Neville's motion to remand is therefore **DENIED**.

## IV.    CONCLUSION

For the reasons set forth above, the Court **GRANTS** Defendants' motion for leave to clarify response [DE33] and **DENIES** Neville's motion to remand. [DE 25]. As set forth in the agreed briefing schedule [DE 24], Neville shall respond to Defendants' motions to dismiss within **21 days** after the date of this Order.

---

[3] In accordance with Kentucky law, Neville's complaint does not demand a specific dollar amount. Accordingly, the notice of removal may assert the amount-in-controversy. 28 U.S.C § 1446(c)(2)(A)(ii). The notice of removal need only contain a "short and plain statement of the grounds for removal," including that the plaintiff's claims exceed $75,000.  *See Halsey v. AGCO Corp.*, 755 F. App'x 524, 527 (6th Cir. 2018). Defendants' notice of removal does so, and Neville does not argue that the jurisdictional threshold is not satisfied.