UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

RILEY NEVILLE — Plaintiff

v. — Civil Action No. 3:25-cv-227-RGJ-RSE

THE SALVATION ARMY NATIONAL CORPORATION, ET AL. — Defendants

* * * * *

**MEMORANDUM OPINION AND ORDER**

Terri Neville moves [DE 55] for leave to file an intervening complaint in this case under Federal Rules of Civil Procedure 24(a) or 24(b). Defendants The Salvation Army USA Southern Territory ("Southern Territory") and The Salvation Army Kentucky and Tennessee Division ("K/T Division") (collectively "Defendants") responded [DE 61], and Terri Neville replied [DE 63].

Plaintiff Riley Neville and Defendants submitted a proposed agreed order requesting dismissal of this action with prejudice. [DE 56]. Terri Neville filed her objections to the proposed agreed order of dismissal [DE 59]. Defendants responded [DE 60], and Terri Neville replied [DE 62].

These matters are ripe for adjudication. For the reasons below, Terri Neville's motion to file an intervening complaint is **DENIED**, Riley Neville and Defendants' proposed agreed order of dismissal [DE 56] is **GRANTED** and this action is **DISMISSED WITH PREJUDICE**.

## I. BACKGROUND

Riley Neville was a minor involved in the Salvation Army when she alleges a Salvation Army employee, Joel Collier ("Collier"), began to groom and sexually abuse her. [DE 46 at 644–50]. Riley Neville contends that in February 2017 Collier, as the Divisional Music Director for Southern Territory, began a texting relationship with her and sent graphic sexual text messages.

[*Id.* at 645–46]. Riley Neville contends that this practice escalated over the next four years "to the point that [Collier] was telling her what type of sexual acts he expected from her when she turned eighteen." [*Id.* at 647]. Riley Neville alleges that Collier first physically abused her in summer 2019, when she was seventeen years old, and that the physical abuse escalated after she turned eighteen. [*Id.* 650–51]. As a result of the continued abuse, she attempted to take her own life in December 2020 and February 2021. [*Id.* at 651, 653].

Riley Neville originally brought this suit against Southern Territory and K/T Division, asserting negligence; negligent hiring, supervision, and retention; fraudulent misrepresentation; fraudulent omission; aiding and abetting human trafficking; negligent/intentional infliction of emotional distress; and breach of fiduciary duty.[1] [DE 1-1 at 27–36].

In the United States, the Salvation Army is comprised of four separate regional corporate entities, including Southern Territory. [DE 46 at 640]. Riley Neville contends that another of those entities, Eastern Territory, had placed Collier's name on its territorial registry, which was intended to identify individuals determined to be a danger to children. [*Id.* at 641–42]. Riley Neville alleges that around 2015, Collier applied for a position with Southern Territory. [*Id.* at 642–43]. After learning that Collier was in the Eastern Territory's registry, Southern Territory removed him from the registry, and, despite knowledge of his prior sexual texts with a minor female, hired him as the Divisional Music Director, a position that tasked him with "leading faith-based music ministry programs, attending music camps, and serving as a leader in Defendant K/T Division's band and chorus." [*Id.*]. Southern Territory made the decision to remove Collier from the registry even though "[t]he Eastern Territory strongly disagreed with this decision and warned the Southern

[1] Riley also initially named The Salvation Army National Corporation ("Salvation Army National") as a defendant. [DE 1-1 at 12]. The Court granted Salvation Army National's motion to dismiss Riley's claims against it for lack of personal jurisdiction. [DE 43].

Territory not to hire Collier." [*Id.* at 643]. Riley Neville alleges that her pastor, Sara Orozco, and her youth pastor, Candell Rainey, both filed Safe from Harm complaints against Collier for his behavior with Riley Neville, but K/T Division did not follow up on either complaint. [*Id.* at 649–50]. Riley Neville also alleges that her parents reported Collier's abuse to Defendants in April 2021. [*Id.* at 653].

On April 22, 2026, Defendants filed a third-party complaint against Terri Neville, Riley Neville's mother and an employee of Southern Territory. [DE 48 at 684]. Defendants alleged that Terri Neville failed to report her concerns about Riley Neville and Collier's relationship to Defendants and permitted Riley Neville to use "concealable communication methods, such as Snapchat, to engage in private communications with Collier" which, Defendants contend was a "circumvention of established safety policies[.]" [*Id.* at 692]. Accordingly, Defendants argued, if they were found liable for any harm to Riley Neville, they were entitled to "have [their] liability determined in accordance with the principles of comparative fault under KRS 411.182 and to seek contribution and/or indemnity from Terri Neville[.]" [*Id.* at 693]. On May 26, 2026, Defendants voluntarily dismissed their third-party complaint against Terri Neville before she answered it. [DE 54].

On July 20, 2026, Terri Neville moved for leave to file an intervening complaint pursuant to Federal Rules of Civil Procedure 24(a) or 24(b). [DE 55 at 716]. Terri Neville's proposed intervening complaint alleges that Defendants fired Terri Neville in retaliation for her report of Collier's abuse of Riley Neville. [DE 55-1 at 724]. Terri Neville also contends that Defendants' allegations in their third-party complaint caused her emotional and reputational harm and were defamatory. [*Id.* at 724–25]. Terri Neville articulates eight counts against Defendants based on these actions: (1) negligence, (2) defamation, (3) violation of the Kentucky Whistleblower Act, (4)

malicious prosecution, (5) abuse of process, (6) retaliation, (7) intentional infliction of emotional distress, and (8) punitive damages. [*Id.* at 727–30].

On July 21, 2026, Riley Neville and Defendants submitted a proposed agreed order of dismissal. [DE 56]. This Court determined that because Terri Neville, who had appeared as a third-party defendant, had not agreed to the stipulation of dismissal, dismissal could only be entered by the Court on terms the Court considers proper pursuant to Federal Rule of Civil Procedure 41(a)(2). [DE 58 at 737].

## II. TERRI NEVILLE'S MOTION FOR LEAVE TO FILE AN INTERVENING COMPLAINT

### A. Standard

Under Federal Rule of Civil Procedure 24(a), the "court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent the interest." Fed. R. Civ. P. 24(a)(2). To satisfy this rule, the Sixth Circuit requires an applicant show that: "1) the application was timely filed; 2) the applicant possesses a substantial legal interest in the case; 3) the applicant's ability to protect its interest will be impaired without intervention; and 4) the existing parties will not adequately represent the applicant's interest." *Blount-Hill v. Zelman*, 636 F.3d 278, 283 (6th Cir. 2001) (citing *Grutter v. Bollinger*, 188 F.3d 394, 397–98 (6th Cir. 2011)); *see also Providence Baptist Church v. Hillandale Comm., Ltd.*, 425 F.3d 309, 315 (6th Cir. 2005) ("We have adopted a rather expansive notion of the interest sufficient to invoke intervention of right.") (internal quotations omitted). Each element is mandatory, so a failure to satisfy any element will defeat intervention. *Blount-Hill*, 636 F.3d at 283.

Federal Rule of Civil Procedure 24(b) governs permissive intervention: "On timely motion, the court may permit anyone to intervene who: (A) is given a conditional right to intervene by a federal statute; or (B) has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1).

For intervention under either Rule 24(a) or 24(b), the proposed intervenor "bears the burden of establishing that they either have the right or should be permitted to intervene." *United States v. J&A Tax Servs., LLC*, No. 24-10560, 2026 WL 2318348, at *1 (E.D. Mich. Aug. 10, 2026) (citing *United States v. Michigan*, 424 F.3d 438, 443 (6th Cir. 2005); *United States v. Michigan*, No. 23-1944, 2025 WL 764613, at *2 (6th Cir. Mar. 11, 2025)).

**B. Discussion**

1. Intervention As a Matter of Right

Terri Neville argues that the Court should permit her to intervene as a matter of right pursuant to Rule 24(a) because her "claims arise out of the same events and circumstances that form the basis of . . . Riley Neville's claims against the Defendants." [DE 55 at 717]. "Specifically," Terri Neville elaborates, these shared circumstances are that Riley Neville "claims she was sexually abused at the hands of the [Defendants] and their employee, and that after Terri Neville reported the abuse and exploitation of her daughter, the Defendants retaliated" against Terri Neville. [DE 63 at 755]. Terri Neville argues that "[a]lthough Defendants have dismissed their Third-Party Complaint against her, the allegations against Terri Neville have already been made in this litigation" and, as a result, Terri Neville "will be unable to protect her own interests or obtain relief from the harm caused by those allegations" without intervention. [DE 63 at 755; *see also* DE 55 at 717].

To intervene as a matter of right pursuant to Rule 24(a), Terri Neville must identify a "substantial legal interest in the case." *Blount-Hill*, 636 F.3d at 283. The mere fact that some of Terri Neville's claims arise out of the same events and circumstances that form the basis of Riley Neville's claims against Defendants does not satisfy this requirement. While Terri Neville asserts that her "interests will be impaired" if she is not able to intervene, she does not describe at all how her interests will be impaired. [DE 63 at 754–55; *see also* DE 55 at 717]. Terri Neville emphasizes that Defendants' allegedly defamatory statements were made during this litigation, but she has not identified any reason why her defamation claims or any of her other claims could not be brought against Defendants as an independent suit, nor can the Court identify any. [*See* DE 55 at 717; DE 63 at 754–55]. Because Terri Neville fails to articulate a "substantial legal interest," she is unable to establish the requirements to intervene as a matter of right pursuant to Rule 24(a). *See Blount-Hill*, 636 F.3d at 283 ("[F]ailure to satisfy any one of the elements will defeat intervention under [Rule 24(a)].").

2. <u>Permissive Intervention</u>

Terri Neville argues that, in the alternative, this Court should exercise its discretion to allow her to intervene pursuant to Rule 24(b). [DE 55 at 717–18; DE 63 at 755–56]. She argues that her claims share "both common questions of law and fact with those present in the underlying action" and "arise in large part from the same conduct of the Defendant[s] that forms the basis of Riley Neville's claims." [DE 63 at 755]. Terri Neville does not, however, identify any specific common questions of law or fact between her and Riley Neville's claims. [*See* DE 55 at 717–18; DE 63 at 755–56]. She further argues that her claims "arise directly from Defendants' Third-Party Complaint and their allegations that she allowed the risk that . . . Riley Neville would be subjected to sexual abuse or exploitation." [DE 55 at 718].

While Terri Neville argues that her claims arise out of the allegations made by Defendants in their third-party complaint, these claims are no longer at issue in this case, as Defendants had already voluntarily dismissed their claims against her before she moved to file an intervening complaint. [*See* DE 54].

Some of Terri Neville's claims—particularly those based on her report to Defendants—arise from the same narrative that Riley Neville describes in her amended complaint. Riley Neville contends that her parents, upon learning of Collier's actions, "immediately reported it to the Salvation Army" in April 2021 [DE 46 at 653]. Terri Neville's claims for violation of the Kentucky Whistleblower Act and retaliation also require showing that she reported Collier's abuse. [DE 55-1 at 723, 727, 729].

Terri Neville's report is, however, largely peripheral to Riley Neville's claims, if at all relevant to them. This Court has already dismissed Riley Neville's negligence and negligent hiring, retention, and supervision claims to the extent that those claims rely on incidents that occurred after March 27, 2020, Riley Neville's eighteenth birthday. [DE 43 at 632]. Terri Neville's report also does not appear to be meaningfully at issue for any of Riley Neville's other claims: her fraudulent misrepresentation claim depends on representations made by Defendants during the summers of 2018 and 2019 [DE 46 at 658–60], her fraudulent omission claim focuses on Defendants' duty to disclose pursuant to "mandatory reporting laws that are designed to protect the safety of minors" [DE 46 at 661], and her negligent/intentional infliction of emotional distress claim focuses on Defendants' breaches of their duties in hiring Collier for a role involving minors [DE 46 at 661–62].

Terri Neville's proposed intervening complaint would also significantly expand the scope of this case. Her claims arise out of either her report and Defendants' retaliation (Counts 3 and 6)

or Defendants' third-party complaint (Counts 1, 2, 4, 5, and 7). [DE 55-1 at 727–29]. Terri Neville's complaint would bring into focus her report, currently only peripheral to Riley Neville's claims, and expand the scope of this case to also encompass Defendants' alleged acts in retaliation. Additionally, most of her claims and allegations center on Defendants' knowledge and intent in filing their third-party complaint. These claims, which allege that Defendants made the third-party complaint "without any reasonable basis" and for "an ulterior purpose," would go well beyond questions about Defendants' actions from 2015 to 2021 relating to Collier and instead require factual determinations as to Defendants' intentions in this litigation. [*Id.* at 728].

Because Terri Neville's claims have few factual or legal questions overlapping with Riley Neville's claims and because her claims would dramatically expand the scope of this case, the Court declines to exercise its discretion under Rule 24(b) to allow her to intervene.

Since Terri Neville fails to articulate a "substantial legal interest" to intervene under Rule 24(a) and this Court declines to allow her to intervene under Rule 24(b), her motion for leave to file an intervening complaint is **DENIED**.

## III. PROPOSED AGREED ORDER OF DISMISSAL

### A. Standard

Federal Rule of Civil Procedure 41(a)(2) authorizes dismissal of an action at the plaintiff's request by court order, on terms that the court considers proper. Rule 41(a)(2) usually involves a plaintiff seeking to dismiss an action without prejudice, and a dismissal under Rule 41(a)(2) is without prejudice unless the order states otherwise. Fed. R. Civ. P. 41(a)(2); *Smoot v. Fox*, 340 F.2d 301, 302 (6th Cir.1964) ("[Rule 41(a)(2)] contemplates the dismissal by plaintiff of an action without prejudice[.]"); *see, e.g.*, *Travelers Indem. Co. v. La Bestia Constr. Ltd. Liab. Co.*, No. 3:23-CV-418-RGJ, 2026 WL 316549 (W.D. Ky. Jan. 15, 2026). "The primary purpose of the rule

in interposing the requirement of court approval is to protect the nonmovant from unfair treatment." *Grover by Grover v. Eli Lilly & Co.*, 33 F.3d 716, 718 (6th Cir. 1994) (citing *Ikospentakis v. Thalassic S.S. Agency*, 915 F.2d 176, 177 (5th Cir. 1990)).

If, however, a plaintiff "moves under Rule 41(a)(2) to voluntarily dismiss its complaint *with prejudice*," in general "the district court must grant the motion." *United States v. Est. of Rogers*, No. 1:97-CV-461, 2003 WL 21212749, at *1 (E.D. Tenn. Apr. 3, 2003), aff'd sub nom. *United States v. Alpha Med., Inc.*, 102 F. App'x 8 (6th Cir. 2004) (citing *Smoot*, 340 F.2d at 303; *York v. Ferris State University*, 36 F.Supp.2d 976, 979 (W.D.Mich.1998)) (emphasis added). The Sixth Circuit reasoned in *Smoot v. Fox* that a plaintiff "could not be required to litigate . . . 'when he considers he has no cause of action or *for any reason* wishes to dismiss his action with prejudice.'" *Pedreira v. Sunrise Children's Servs., Inc.*, 79 F.4th 741, 747 (6th Cir. 2023) (quoting *Smoot*, 340 F.2d at 303) (emphasis in original). Nonetheless, because "[m]odern litigation involves ever-more complex configurations of parties," this rule is not absolute: "there may be rare cases in which dismissal with prejudice adversely affects the interests of defendants or third parties in a way that causes them plain legal prejudice." *Id.* at 750–51 (holding that even when a plaintiff moves to dismiss with prejudice district courts should "use their discretion" and "impose terms and conditions on dismissals as they see fit" to avoid legal prejudice).

B. **Discussion**

In this case, Riley Neville and Defendants submitted a proposed agreed order requesting that this action be dismissed with prejudice. [DE 56]. This Court found that dismissal under Federal Rule of Civil Procedure 41(a)(1)(A)(ii) was not available because Terri Neville, who appeared in the action as a third-party defendant, had not agreed to the stipulation of dismissal. [DE 58, citing *Anderson-Tully Co. v. Fed. Ins. Co.*, 347 F. App'x 171, 176 (6th Cir. 2009)]. This Court, therefore,

noted that "the parties' proposed agreed order of dismissal can only be entered by court order under Fed. R. Civ. P. 41(a)(2), on terms the court considers proper," and ordered Terri Neville to file any objection to the proposed order of dismissal. [DE 58 at 737–38].

Terri Neville "does not object to the dismissal of . . . Riley Neville's claims against Defendants[.]" [DE 59 at 740]. However, Terri Neville asks that "any Order of dismissal expressly provide that the dismissal only applies to claims made by . . . Riley Neville" so as not to "prejudice, impair, or otherwise affect Terri Neville's right to proceed against the Defendants in this action." [*Id.*]. She asks that if the Court grants the proposed agreed order of dismissal, the Court also "establish that [Terri Neville's] claims remain on this Court's docket in light of her pending Motion to Intervene[.]" [*Id.*].

Because Riley Neville and the Defendants' proposed agreed order of dismissal asks the Court to dismiss this action with prejudice, the Court must dismiss the action unless it falls into the category of "rare cases in which dismissal with prejudice adversely affects the interests of defendants or third parties in a way that causes them plain legal prejudice." *Pedreira*, 79 F.4th at 751. Because Defendants have agreed to Riley Neville's proposed dismissal of her claims, their interests are not adversely affected by dismissal with prejudice. The only question is whether Terri Neville's interests are adversely affected. Terri Neville's principal concern relates to her ability to pursue the claims in her intervening complaint in this action. Given that the Court denies Terri Neville's motion for leave to file an intervening complaint, this concern is mooted, and she does not identify any other way in which dismissing this action with prejudice will adversely affect her interests. [*See* DE 59 at 740; DE 62 at 750–51]. This case, therefore, does not fall into the category of "rare" cases to which *Smoot* does not apply, and the Court finds dismissal with prejudice

appropriate under Rule 41(a)(2). *Pedreira*, 79 F.4th at 751. Accordingly, the proposed agreed order of dismissal is **GRANTED** and this action is **DISMISSED WITH PREJUDICE**.

## IV. CONCLUSION

Having considered the parties' filings and the applicable law, and being otherwise sufficiently advised,

**IT IS ORDERED** that Terri Neville's Motion For Leave to File an Intervening Complaint [DE 55] is **DENIED**.

**IT IS FURTHER ORDERED** that the Proposed Agreed Order of Dismissal [DE 56] is **GRANTED** and this action is **DISMISSED WITH PREJUDICE**.

The Court will enter separate judgment.

Rebecca Grady Jennings, District Judge
United States District Court

October 13, 2026